Nathan **BROCK**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 38A02–1003–CR–272.

Court of Appeals of Indiana.

Oct. 26, 2010.

Transfer Granted Jan. 6, 2011.

Dale W. Arnett, Winchester, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Nathan Brock appeals his conviction for Operating a Motor Vehicle After Forfeiture of License for Life,[1] a class C felony. Brock argues that his convictions violate double jeopardy because the trial court granted the State's request for a mistrial at the close of the first trial in the absence of a manifest necessity to do so and then permitted the State to retry Brock, resulting in the convictions at issue herein. Finding that the mistrial and subsequent retrial do not violate double jeopardy, we affirm.

### FACTS

On May 28, 2007, Portland Police Officer Nathanial Springer was dispatched on a report that Brock was driving a vehicle without a valid license. Officer Springer went to the area and saw a vehicle being driven by Brock that matched the description provided in the dispatch. Officer Springer observed Brock drive through an intersection at which he was required to stop, nearly causing a collision with another vehicle that had the right of way. Officer Springer initiated a traffic stop, and Brock eventually stopped. Brock told the officer that he had been fleeing because he did not have a license; his driving privileges had been suspended for life as a habitual traffic violator (HTV) on June 14, 1993.

On May 30, 2007, the State charged Brock with class C felony operating a vehicle after a lifetime suspension and class D felony resisting law enforcement. Brock's first jury trial took place on January 13–14, 2010.[2] During closing argument, Brock's counsel made a number of statements to which the State objected:

- Referring to Brock's *prior* conviction for class D felony operating a motor

---

1. Ind.Code § 9–30–10–17.

2. The long delay is primarily attributable to the fact that Brock went through nine different attorneys. Appellant's App. p. 1–14.

vehicle while privileges are suspended, Brock's attorney noted that a conviction under that statute—Indiana Code section 9–30–10–16—"requires notice to the person that their license has been suspended. We've got no proof that Mr. Brock was ever given notice that his license was suspended." Tr. p. 262. The State objected, arguing that Brock was arguing facts that were not in evidence and mischaracterizing the evidence. The trial court sustained the objection, noting that in the instant trial, Brock was charged under Indiana Code section 9–30–10–17, which contains no notice requirement, "[s]o please refrain from inferring [sic] to the jury that there is any sort of notice requirement." *Id.* at 263.

- Brock's counsel continued to refer to section 16, and the trial court continued to admonish counsel that section 16 was the prior conviction, that there is no notice requirement under section 17, and that counsel must stop implying to the jury that the State was required to prove notice to obtain a conviction under section 17.

- Brock's attorney then went on to argue that there was no evidence in the record establishing a prior conviction under section 16, pointing out that the BMV record in evidence does not contain a code citation. The State contended that "the driving record is sufficient to show that he has a prior conviction for operating while HTV which is the class D Felony. Just because it doesn't say 9–30–10–16, I don't think renders it a point because all he is trying to do is get in through the back door of this element. Well maybe he didn't know his driving

privileges were suspended for life. That's the only reason to allow him to argue that...." *Id.* at 267. The trial court agreed with the State, noting that although the BMV record does not contain a code citation, there's only one way that a person can be declared an HTV for life, which is via a section 16 conviction: "Again, there's no requirement of any sort of notice under the statute that Mr. Brock is currently charged under. His record does show he has a prior conviction for operating a vehicle as an HTV as a felony and again, you are not going to be allowed to argue any sort of notice requirement, as far as the current charge is concerned." *Id.* at 268.

- Brock's counsel then turned to the jury and said, "there is nothing in this [BMV] report that says Mr. Brock violated 9–30–10–16." *Id.* at 269. The State objected, arguing that counsel was misstating and mischaracterizing the evidence.[3] The trial court again told counsel not to tell the jury that Brock was accused of violating section 16, emphasizing, "Don't do it again. Don't do it again." *Id.*

- Next, counsel noted that the BMV report indicates that Brock moved to Alabama in 1992, and the State objected because it contended counsel was implying that Brock had no notice that his privileges had been suspended because he had moved out of state. Counsel told the trial court that he made the point to establish that when Brock was pulled over for the instant offenses, he had an Alabama driver's license. The trial court responded that "it is driving privilege[s] in

**3.** Brock's BMV record indicates that his license was suspended indefinitely in 1993 because of "operating HTV/felony." State's Ex. 1 p. 2.

Indiana [that] we are concerned with." *Id.* at 270.

- Brock's counsel next told the jury that, "other than a couple of lines" in the BMV report, there is nothing that indicates what his prior conviction was for. *Id.* at 271. The State objected and the trial court sustained the objection, again emphasizing that "[w]e are not going into his prior conviction and to make a statement that there's nothing in the record that shows a prior conviction, is not accurate because it is in the driving record.... It's the evidence.... You may say it's weak, but you can't mischaracterize it." *Id.* at 271–72.
- Counsel then returned to the jury and said, "I can say that it's weak. We again, have stuff redacted. We don't know what's happened afterwards." *Id.* at 272. The State objected, arguing that counsel "insinuated that there is something [that had been redacted from the BMV report] that may be beneficial to his client," contending that the State should have the right to provide the jury with a non-redacted version of the report. *Id.*

Although Brock's attorney agreed to re-open the evidence, the State moved for a mistrial:

Three (3) statements after the Court admonished him not to refer to something that is immaterial and wrong in this case. And now to refer to a State's Exhibit and something that's been redacted and somehow imply or infer that there really is something beneficial in that record that's been redacted, is highly prejudicial to my case and I'm not sure that I can cure it.

*Id.* at 274. The trial court denied the motion for a mistrial, ordering that the evidence would be reopened and giving the State permission to introduce the unre-dacted copy of the BMV report. The trial court called a recess, and after it re-called the jury, Brock, and the attorneys, the trial court stated that, "upon further reflection ... [t]he court has changed its mind and is going to grant the State's request for a mistrial of this case." *Id.* at 276. Brock did not object.

On February 2, 2010, the day before the scheduled retrial, Brock filed a motion to dismiss on double jeopardy grounds. The trial court denied the motion on the same day. Brock's second trial was held on February 3, 2010, and the jury found Brock guilty of class C felony operating after lifetime suspension and not guilty of class D felony resisting law enforcement. On March 4, 2010, the trial court imposed a five-year sentence, and Brock now appeals.

## DISCUSSION AND DECISION

Brock's sole argument on appeal is that the retrial and resulting conviction constituted a double jeopardy violation. As a general matter, jeopardy attaches when a jury has been selected and sworn. *Jackson v. State,* 925 N.E.2d 369, 372 (Ind. 2010). But the protection against double jeopardy does not prevent re-prosecution if the defendant waives his right to raise double jeopardy claims or if there was a "manifest necessity" for a mistrial. *Ried v. State,* 610 N.E.2d 275, 278–79 (Ind.Ct. App.1993). A "manifest necessity" exists when, " 'taking all the circumstances into consideration[,] ... the ends of public justice would otherwise be defeated.' " *Jackson,* 925 N.E.2d at 373 (quoting *United States v. Perez,* 22 U.S. 579, 580, 9 Wheat. 579, 6 L.Ed. 165 (1824)). It is not an abuse of discretion to find a manifest necessity just because some other trial judges might have found less extreme measures to be sufficient to cure the problem. *Arizona v. Washington,* 434 U.S.

497, 511, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

■ As an initial matter, we note that Brock failed to lodge a timely and contemporaneous objection *either* to the State's request for a mistrial *or* to the trial court's ultimate decision to grant one. Consequently, he has waived his right to claim a double jeopardy violation. *Jester v. State,* 551 N.E.2d 840, 842 (Ind.1990); *cf. Jackson,* 925 N.E.2d at 372 (noting that the defendant had preserved the double jeopardy issue where, although he did not object after the trial court had ordered a mistrial, he had opposed the State's request for a mistrial "and argued before the trial court that a mistrial was inappropriate because the jurors exposed to the article all attested that they were not influenced by it," thereby bringing the issue to the trial court's attention). The fact that Brock filed a motion to dismiss the charges weeks later did not preserve his right to raise the issue; consequently, he has waived the argument he raises on appeal.

Waiver notwithstanding, we note that our Supreme Court has cautioned that "the trial court's determination of the need to discharge the earlier jury is entitled to deference...." *Jackson,* 925 N.E.2d at 371. The *Jackson* Court also explained that

[m]any different factors may bear on the need for a mistrial. First, it is significant whether the reason for the mistrial is attributable to the prosecution. If so, the State must demonstrate a "much higher" degree of necessity for the mistrial....

The necessity of a mistrial is also evaluated in light of the steps taken by the trial court to avoid a mistrial. The burden imposed by a mistrial is also relevant....

*Id.* at 373–74 (internal citations omitted).

■ Here, the need for the mistrial was caused by Brock, not by the prosecution. The trial court went to great lengths to caution Brock's counsel to avoid certain topics of argument in front of the jury, often repeating the same instructions to counsel more than once. It also initially denied the request for a mistrial but ultimately granted it after taking time to reflect upon the issue, evidencing how carefully it considered the matter. And although the mistrial occurred at the end of the trial, the trial was a very short one—the State called only one witness and Brock called none. Moreover, the retrial was rescheduled for only three weeks later. Thus, the burden imposed by the mistrial and subsequent retrial was minimal. The *Jackson* factors, therefore, do not weigh against the trial court's ruling herein.

Brock's primary argument on appeal is that the mistrial was unnecessary because counsel did not make any improper statements. To properly analyze this argument, we must first consider the statutory scheme within which Brock's past and current convictions fall. If a person commits the requisite number of qualifying driving offenses and/or infractions, he will be classified as an HTV by the BMV and his driving privileges will be suspended by the BMV for ten years. I.C. §§ 9–30–10–4, – 5. If the person operates a vehicle during the ten-year suspension period, he is subject to conviction under section 16, which makes it a class D felony to operate a motor vehicle while the person's driving privileges are validly suspended under the HTV chapter and the person knows that his driving privileges are suspended. I.C. § 9–30–10–16. If the person is convicted

of that offense, he automatically forfeits his driving privileges for life. *Id.*

Here, Brock was charged under section 17 with operating a vehicle after his driving privileges had been suspended for life pursuant to a section 16 conviction. I.C. § 9–30–10–17. Unlike section 16, section 17 does not include a knowledge requirement. In *Pierce v. State*, this court considered the absence of a mens rea requirement, concluding that section 17 has no such requirement

> because with a conviction, unlike with a BMV-generated suspension or adjudication, the defendant is necessarily more directly involved. A defendant who has been convicted of being an habitual traffic offender and whose license has accordingly been suspended for life has almost certainly appeared in court, entered a plea of guilty or been convicted after a trial in which he participated, and been sentenced by the trial court to a lifetime suspension.

737 N.E.2d 1211, 1214 (Ind.Ct.App.2000), *trans. denied.* The *Pierce* court, therefore, held that proof of a prior conviction of being an HTV with a license suspended for life—which can be established solely by introducing the defendant's BMV record—together with proof that the defendant was driving the vehicle is sufficient to sustain a section 17 conviction.

The only things properly at issue in Brock's trial herein, therefore, were (1) whether his BMV record was properly introduced, (2) whether his BMV record established that he had a prior conviction for being an HTV with a lifetime suspension of driving privileges, and (3) whether he was driving the vehicle when stopped by the police officer. Brock's attorney repeatedly and improperly attempted to inject the issue of notice into closing argument. Specifically, he explicitly questioned whether Brock had been given proper no-

tice before his *prior* section 16 conviction, which was not before the jury and confused the issues, inasmuch as the State was not required to prove notice or knowledge to convict Brock of a section 17 felony. After repeatedly being admonished by the trial court to refrain from injecting the notice issue into the trial, counsel continued to refer to the issue by implication and inference.

Counsel then moved on to the BMV record itself, making a proper argument that the record was insufficient because it failed to list the code section that Brock had been convicted of violating. Although it was proper to argue that only "a couple of lines," tr. p. 271, in the record indicate a prior conviction, it was improper and inaccurate to argue that "nothing," *id.* at 269, in the record established that Brock had a prior section 16 conviction. As the trial court observed, counsel was entitled to argue that the evidence was "weak," *id.* at 272, but he was not entitled to mischaracterize the evidence by arguing that it was nonexistent.

Brock's attorney continued his line of attack on the BMV record, highlighting the redactions in the exhibit and implying that something had been redacted that may have been beneficial to his client. As the State notes,

> [n]othing that was redacted was in any way beneficial or helpful to [Brock], as his counsel was surely aware; rather, it was only information about [Brock's] other infractions, suspensions, and chemical test failures. Defense counsel surely knew that [Brock's] 1993 conviction had never been reversed and his lifetime suspension had never been rescinded.

Appellee's Br. p. 14. It was at this point in the trial that the prosecutor concluded that the totality of counsel's improper, inaccurate, and confusing comments made it necessary to request a mistrial in the in-

terests of justice. Although the trial court could have elected to go with its first instinct to reopen the evidence and provide an unredacted version of the BMV report to the jury, it chose, upon further reflection, to declare a mistrial. That either course would have been appropriate does not lead to a conclusion that the trial court abused its discretion. *See Arizona*, 434 U.S. at 511, 98 S.Ct. 824 (noting that manifest necessity does not mean a mistrial had to be "necessary" in "a strict, literal sense"), *cited with approval in Jackson*, 925 N.E.2d at 373.

Given the totality of the circumstances, counsel's repeated insistence on ignoring the trial court's admonishments, and confusion of the issues for the jury, we cannot say that the trial court erred by finding a mistrial to be a manifest necessity. Therefore, Brock's subsequent retrial and conviction did not constitute a double jeopardy violation.

The judgment of the trial court is affirmed.

NAJAM, J., and MATHIAS, J., concur.