ATTORNEY FOR APPELLANT
Dale W. Arnett
Winchester, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Henry Flores, Jr.
Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED
Oct 18 2011, 8:43 am
CLERK
of the supreme court,
court of appeals and
tax court

No. 38S02-1101-CR-8

NATHAN BROCK,

*Appellant (Defendant below)*,

v.

STATE OF INDIANA,

*Appellee (Plaintiff below)*.

Appeal from the Jay Superior Court, No. 38D01-0705-FC-3
The Honorable Max C. Ludy, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 38A02-1003-CR-272

**October 18, 2011**

**Sullivan, Justice.**

The defendant's first trial ended in a mistrial due to improper prejudicial comments made by defense counsel during closing argument. We hold that, although the defendant did not consent to the mistrial, his second trial did not violate the Double Jeopardy Clause of the Fifth Amendment because the trial court did not abuse its discretion in concluding that a mistrial was justified by manifest necessity.

## Background

The defendant, Nathan Brock, was classified as a habitual traffic violator ("HTV") by the Bureau of Motor Vehicles ("BMV") and his Indiana driver's license was suspended.[1] See Ind. Code §§ 9-30-10-4, -5. Brock continued to drive until he was caught, in January, 1993, driving on a suspended license. On June 14, 1993, he pled guilty to violating Indiana Code section 9-30-10-16, which made it a Class D felony for an HTV to operate a motor vehicle while his or her driving privileges were suspended,[2] and his Indiana driving privileges were suspended for life.

On May 28, 2007, Brock was arrested again for being an HTV driving after his privileges had been suspended for life. On May 30, 2007, the State filed an information charging Brock with one count of violating Indiana Code section 9-30-10-17, which makes it a Class C felony for an HTV to operate a motor vehicle after his or her driving privileges have been forfeited for life under Indiana Code section 9-30-10-16. The State also charged him with one count of Class D felony resisting law enforcement under Indiana Code section 35-44-3-3.

The first jury trial commenced on January 13, 2010,[3] and lasted two days. The State's lone witness was the arresting officer, and its only tangible evidence was the defendant's redacted driving record, which was admitted without objection. The redacted driving record indicated that the defendant's "License Status" was "Habitual Traffic Violator"; that on June 14, 1993, he had been convicted in Jay Circuit Court of "Operating HTV/Felony"; that on the same

---

[1] Brock's unredacted driving record reveals that between 1988 and 1992 he was twice convicted for operating a vehicle while intoxicated. Also during that time period, he was convicted for driving 15 miles per hour over the speed limit on one occasion and 55 miles per hour over the speed limit on another. His Indiana driver's license was also suspended six times during those four years, for varying reasons. The relevance of these facts will become clear later in this opinion.

[2] The current version of Indiana Code section 9-30-10-16 also makes it a Class D felony for an HTV to operate a motor vehicle while his or her driving privileges are validly suspended. Ind. Code § 9-30-10-16(a)(1) (2010). In 2000, however, the General Assembly added a notice requirement to section 16 so that now, in addition to driving while privileges are suspended, the HTV must have knowledge that his or her driving privileges are suspended; service by the BMV, in compliance with the statute, of notice that driving privileges have been suspended creates a rebuttable presumption that the HTV has such knowledge. Pub. L. No. 120-2000, § 2, 2000 Ind. Acts 991, 992 (codified as amended at I.C. § 9-30-10-16(a), (b)).

[3] The more than two-and-a-half-year delay in going to trial was primarily attributable to the defendant.

2

day his driving privileges had been suspended for "Operating HTV/Felony"; and that the expiration date of the suspension was "Indefinite." The defense rested without calling any witnesses or presenting any evidence.

During his closing argument, defense counsel made several statements to the jury that prompted objections from the State. Defense counsel argued that the notice requirement of Indiana Code section 9-30-10-16 applied as well to section 9-30-10-17, with which the defendant was charged. The trial court admonished defense counsel that Brock had been charged under section 17, not section 16, and that there was no notice requirement under section 17. Accordingly, the court ordered defense counsel to "refrain from inferring to the jury that there is any sort of notice requirement." Tr. 263. Brock's counsel then argued that there was no evidence to establish that the prior conviction evidenced by the redacted driving record was for violating section 16. Agreeing with the State, the trial court explained that the driving record did show that the defendant had been convicted under section 16 because, even though the driving record did not contain a citation to section 16 (or any other statute), there was only one way that the defendant could have become an HTV for life with a lifetime suspension – conviction under section 16. Tr. 268.

As soon as the jury returned from a short recess, defense counsel again argued that there was "nothing in this report that says Mr. Brock violated 9-30-10-16." Tr. 269. The State again objected, and the trial court again admonished defense counsel not to do it again, but to no avail. After another sidebar, defense counsel again argued to the jury that there was no evidence indicating what the defendant had been convicted of in 1993, "other than a couple of lines here." Tr. 270-71. The State objected for a fourth time, arguing that defense counsel was mischaracterizing the evidence.

After a third sidebar, defense counsel argued to the jury, with the court's permission, that the driving record was "weak" evidence. He followed that up with the following comment: "We again, have stuff redacted. We don't know what's happened afterwards." Tr. 272. The State requested a fourth sidebar because of defense counsel's insinuation that the redacted material may have been beneficial to Brock, when in reality the redacted material was an extensive cata-

3

log of Brock's numerous other traffic convictions and suspensions – material that had been redacted for Brock's benefit. See footnote 1, supra. During this sidebar, the State informed the court that if it were not allowed to address this comment then it would "have to ask for a mistrial" because of defense counsel's mischaracterizations. Tr. 273. The trial court asked if both sides would assent to reopening the evidence, and both agreed. But after a few more comments among counsel and the trial judge, the State "officially" moved for a mistrial because of defense counsel's prejudicial comments. Tr. 274. After concluding sidebar, the trial court denied the motion for a mistrial and ordered that the evidence would be reopened and that the State would be permitted to start its closing argument anew. The court then took a short recess, and when it returned from recess, the trial judge said that, "upon further reflection," he had decided to grant the State's request for a mistrial, and it therefore discharged the jury. Tr. 276-77.

One day before the second trial was set to begin, Brock filed a motion to dismiss on double-jeopardy grounds. The trial court denied the motion, finding that the defendant had not objected to the State's mistrial motion and that the mistrial was prompted by defense counsel's repeated improper statements. The jury convicted the defendant of Class C felony operating a motor vehicle after forfeiture of driving privileges for life but acquitted him of Class D felony resisting law enforcement. The trial court entered judgment accordingly and later sentenced Brock to five years imprisonment.

The Court of Appeals unanimously affirmed, concluding that the defendant had waived his right to claim double jeopardy because he had not lodged a timely objection to the State's motion for mistrial and that, in any event, there was "manifest necessity" justifying the trial judge's declaration of a mistrial. Brock v. State, 936 N.E.2d 266, 270-72 (Ind. Ct. App. 2010).

Brock sought, and we granted, transfer, Brock v. State, 950 N.E.2d 1195 (Ind. 2011) (table), thereby vacating the opinion of the Court of Appeals, Ind. Appellate Rule 58(A).

4

**Discussion**

The sole issue in this appeal is whether the State violated Brock's Fifth Amendment right not to be placed twice in jeopardy by retrying him after his first trial ended in a mistrial.[4] The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; Benton v. Maryland, 395 U.S. 784, 794 (1969). As a threshold matter, Brock was protected from being twice placed in jeopardy because jeopardy "attached" when the first jury was impaneled and sworn. See Downum v. United States, 372 U.S. 734, 736-37 (1963); Jackson v. State, 925 N.E.2d 369, 373 (Ind. 2010). But this merely "begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause" barred his second trial. Illinois v. Somerville, 410 U.S. 458, 467 (1973).

The constitutional protection against double jeopardy has several features. In this case, because the first trial ended in a mistrial, we deal with the defendant's "valued right to have his trial completed by a particular tribunal," Wade v. Hunter, 336 U.S. 684, 689 (1949), which means that the defendant has a right to have his trial completed by the first jury impaneled to try him, Oregon v. Kennedy, 456 U.S. 667, 673 (1982).[5] Valued though this right may be, it "must

---

[4] Brock also argues that his retrial violated Article I, Section 14, of the Indiana Constitution, the Indiana Double Jeopardy Clause. But he failed to provide adequate argumentation in support of this claim, citing only our decision in Litchfield v. State, 824 N.E.2d 356 (Ind. 2005), in which we interpreted Article I, Section 11, of the Indiana Constitution, and arguing simply that any test under the Indiana Constitution would involve analysis of the totality of the circumstances. Pet. to Transfer 9. Such cursory argumentation is not adequate to raise a state constitutional claim so it is therefore waived. Cf. Jackson v. State, 925 N.E.2d 369, 372 n.1 (Ind. 2010); Brown v. State, 703 N.E.2d 1010, 1015 n.4 (Ind. 1998). Brock also invokes Indiana Code section 35-41-4-3, which is simply a codification of the Fifth Amendment, at least with regard to the issues in this case. See I.C. § 35-41-4-3(a)(2)(i), (iv); Tyson v. State, 543 N.E.2d 415, 417 (Ind. Ct. App. 1989). Therefore, we refer only to the Fifth Amendment in this opinion.

[5] The Double Jeopardy Clause embraces at least three other rights. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). First, it protects the accused against reprosecution for the same offense after a judgment of acquittal, even if the acquittal was erroneous. Id.; see also Fong Foo v. United States, 369 U.S. 141, 143 (1962) (per curiam). Second, it protects the accused against reprosecution for the same offense after a judgment of conviction. Pearce, 395 U.S. at 717; see also Brown v. Ohio, 432 U.S. 161, 164-66 (1977). Of course, retrial is permitted if the defendant successfully appeals the conviction on direct or collateral review, United States v. Tateo, 377 U.S. 463, 463-64 (1964); United States v. Ball, 163 U.S. 662, 672 (1896), unless the conviction is reversed due to insufficient evidence, Burks v. United States, 437 U.S. 1, 17-18 (1978). Third, it protects the accused against multiple punishments for the same offense. See Ex

in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Wade, 336 U.S. at 689; see also United States v. Jorn, 400 U.S. 470, 483-84 (1971) (plurality opinion). Accordingly, unlike a trial that has ended with a judgment on the merits, declaration of a mistrial does not automatically bar retrial. Arizona v. Washington, 434 U.S. 497, 505 (1978).

If the trial judge declares a mistrial over the defendant's objection, the defendant may be retried only if the government demonstrates that the mistrial was justified by a "manifest necessity" or that "the ends of public justice would otherwise be defeated." United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824) (Story, J.); see also Washington, 434 U.S. at 505; Somerville, 410 U.S. at 461-63. But if the defendant consents to the mistrial, then retrial is permitted as a matter of course, unless the defendant can prove that the government intentionally goaded him or her into consenting to the mistrial "to subvert the protections afforded by the Double Jeopardy Clause." Kennedy, 456 U.S. at 676; see also Jorn, 400 U.S. at 485. Thus, determining whether the State was permitted to retry Brock after his first trial ended in a mistrial involves a multi-step analysis. We first consider whether he consented to the trial judge's declaration of a mistrial. If so, then we consider whether the government goaded him into consenting. If he did not consent to the mistrial, then we consider whether it was justified by a "manifest necessity."

**I**

A defendant consents to a mistrial where he or she successfully requests termination of the proceedings on grounds unrelated to guilt or innocence. See United States v. Dinitz, 424 U.S. 600, 607-12 (1976); Jorn, 400 U.S. at 484-85; United States v. Tateo, 377 U.S. 463, 467 (1964); see also United States v. Scott, 437 U.S. 82 (1978) (government appeal from trial court's grant at the close of evidence of defendant's motion to dismiss two counts of indictment did not bar retrial because it was not related to guilt or innocence); Lee v. United States, 432 U.S. 23 (1977) (retrial not barred where defendant successfully moved to dismiss a defective indictment after jeopardy had attached because it was functionally indistinguishable from a mistrial). A de-

_____

Parte Lange, 85 U.S. (18 Wall.) 163, 176 (1873); cf. United States v. DiFrancesco, 449 U.S. 117, 138-39 (1980); Pearce, 395 U.S. at 717-21.

fendant may also consent by expressly agreeing to be tried again.  See Ricketts v. Adamson, 483 U.S. 1, 9-12 (1987) (retrial not barred where defendant breached plea agreement that provided for reinstatement of charges in the event of a breach).

In this case, Brock neither requested the mistrial nor expressly agreed to be retried.  Rather, the State argues that he tacitly consented to the mistrial because he failed to raise a contemporaneous objection.  The Court of Appeals agreed and held that because the defendant "failed to lodge a timely and contemporaneous objection either to the State's request for a mistrial or to the trial court's ultimate decision to grant one[,] . . . he ha[d] waived his right to claim a double jeopardy violation."  Brock, 936 N.E.2d at 270 (emphasis in original).  Moreover, "[t]he fact that Brock filed a motion to dismiss the charges weeks later did not preserve his right to raise the issue."  Id.

The United States Supreme Court has rejected the contention that the permissibility of a retrial is such circumstances depends on a knowing, voluntary, and intelligent waiver of the right to be free from double jeopardy.  Dinitz, 424 U.S. at 609 n.11 (citations omitted).  The Supreme Court has not, however, squarely addressed implied consent in this context,[6] but most, if not all, of the United States Circuit Courts of Appeals have.  Those courts have held that a defendant may tacitly or implicitly consent to be retried through certain conduct, including failing to raise a

---

[6] It has cited with approval procedural rules under which a defendant waives his or her double jeopardy claim by failing to raise a timely objection.  Peretz v. United States, 501 U.S. 923, 936 (1991) (citing United States v. Bascaro, 742 F.2d 1335, 1365 (11th Cir. 1984)).  Furthermore, contemporaneous-objection rules are deemed to be state procedural rules, and the Supreme Court has held that, as a general rule, procedural default constitutes independent and adequate state-law grounds precluding its review of a federal substantive claim, see, e.g., Wainwright v. Sykes, 433 U.S. 72, 81-91 (1977) (failure to adhere to state contemporaneous-objection rule bars both direct and collateral review in federal court, unless defendant can satisfy cause-and-prejudice standard); Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935) ("[W]here the judgment of a state court rests upon two grounds, one of which is federal and the other non-federal in character, our jurisdiction fails if the non-federal ground is independent of the federal ground and adequate to support the judgment."), so long as enforcing the state procedural rule does not violate a litigant's due process rights, Brinkerhoff-Faris Trust & Savings Co. v. Hill, 281 U.S. 673, 678-82 (1930).  But see, e.g., Lee v. Kemna, 534 U.S. 362, 375-88 (2002) (federal habeas review was not precluded even though defendant failed to adhere to a state procedural rule requiring motions for continuance to be in writing, where the essential requirements of the rule were substantially met); Osborne v. Ohio, 495 U.S. 103, 123-25 (1990) (direct federal review on one issue precluded by defense counsel's failure to object, but direct review available on a second issue where defense counsel's failure to object was not dispositive because counsel earlier in the trial had pressed the federal issue and nothing would have been gained by requiring counsel to object a second time).

7

timely objection to a mistrial declaration.  See, e.g., United States v. Gantley, 172 F.3d 422, 428-29 (6th Cir. 1999); United States v. Ham, 58 F.3d 78, 83-84 (4th Cir. 1995); United States v. Nichols, 977 F.2d 972, 974-75 (5th Cir. 1992) (per curiam); United States v. DiPietro, 936 F.2d 6, 9-12 (1st Cir. 1991); United States v. Puleo, 817 F.2d 702, 705 (11th Cir. 1987); United States v. Buljubasic, 808 F.2d 1260, 1265-66 (7th Cir. 1987) (Easterbrook, J.); United States v. Smith, 621 F.2d 350, 351-52 (9th Cir. 1980); United States v. Goldstein, 479 F.2d 1061, 1066-68 (2d Cir. 1973); United States v. Phillips, 431 F.2d 949, 950-51 (3d Cir. 1970); Scott v. United States, 202 F.2d 354, 355-56 (D.C. Cir. 1952) (per curiam); cf. Earnest v. Dorsey, 87 F.3d 1123, 1129 (10th Cir. 1996) (failure to withdraw motion to dismiss); United States v. Ford, 17 F.3d 1100, 1102-03 (8th Cir. 1994) (defendant did not withdrawal motions to dismiss and did not object when mistrial declared).[7]  These courts have, for the most part, held that a defendant consents to a mistrial when he or she has an opportunity to object and fails to do so.  Judge Easterbrook provided a helpful explanation in Buljubasic:

> Parties may give assent in many ways.  If a judge should say:  "I think a mistrial would be a good idea, but think this over and let me know if you disagree," the defendant's silence would be assent.  The principal functions of the double jeopardy clause are to allow a defendant to get a verdict at the first trial if he wants one and to keep a verdict that is favorable.  Whether the defendant wants a verdict is something he knows best, and when the occasion for choice comes he must choose unless, as in Jorn, the judge brooks no opposition, or unless there is insufficient time to deliberate.

808 F.2d at 1265-66 (internal citations omitted).  But these courts have also recognized that in some cases there is no opportunity to object and to prohibit a defendant from raising a double-jeopardy claim under such circumstances would be too harsh.  See, e.g., Jorn, 400 U.S. at 487

---

[7] A number of states have followed suit.  See, e.g., Ex Parte Benford, 935 So. 2d 421, 425-26 (Ala. 2006); People v. Ortiz, 586 P.2d 227, 228 (Colo. 1978); State v. Saunders, 838 A.2d 186, 206-08 (Conn. 2004); State v. Johnson, 477 S.E.2d 579, 580 (Ga. 1996); People ex rel. Mosley v. Carey, 387 N.E.2d 325, 328-29 (Ill. 1979); State v. Wittsell, 66 P.3d 831, 834-35 (Kan. 2003); State v. Beaudoin, 600 A.2d 1097, 1098-99 (Me. 1991); Pellegrine v. Commonwealth, 844 N.E.2d 608, 609 (Mass. 2006); State v. Tolliver, 839 S.W.2d 296, 299-300 (Mo. 1992); People v. Ferguson, 494 N.E.2d 77, 80-82 (N.Y. 1986); Commonwealth v. Washington, 559 S.E.2d 636, 638-39 (Va. 2002); cf. State v. Joseph, 434 So. 2d 1057, 1059-60 (La. 1983).  Although most courts appear to have adopted this position, it is by no means universal, see, e.g., Cardine v. Commonwealth, 283 S.W.3d 641, 651-52 (Ky. 2009); Jones v. State, 398 So. 2d 1312, 1318 (Miss. 1981); State v. Voigt, 2007 ND 100, ¶¶ 6-9, 18-20, 734 N.W.2d 787, 790, 792-93, and it is not without scholarly criticism, see Stephen J. Schulhofer, Jeopardy and Mistrials, 125 U. Pa. L. Rev. 449, 536-38 (1977), discussed in 6 Wayne R. LaFave et al., Criminal Procedure § 25.2(a), at 608-09 (3d ed. 2007).

8

(trial judge acted abruptly in declaring mistrial and there was no opportunity to object); United States v. Bates, 917 F.2d 388, 393 (9th Cir. 1990) (no consent where trial judge did not even answer defendants' request for a hearing as he left the bench); United States v. White, 914 F.2d 747, 753-54 (6th Cir. 1990) (no consent where mistrial came as a surprise and there was no opportunity to object); Lovinger v. Circuit Court of the 19th Judicial Circuit, 845 F.2d 739, 744-45 (7th Cir. 1988) (no consent where no opportunity to object).

We find persuasive the approach taken by the United States Circuit Courts of Appeals, particularly that taken by the Seventh Circuit in Buljubasic, and adopt it here.[8] Ordinarily, a defendant must raise a timely objection when the government moves for a mistrial or when the trial court declares a mistrial sua sponte. See Buljubasic, 808 F.2d at 1265-66; see also DiPietro, 936 F.2d at 9-11; Camden v. Circuit Court of the Second Judicial Circuit, 892 F.2d 610, 614-15 (7th Cir. 1989); Puleo, 817 F.2d at 705. This allows the defendant to control the decision whether to go to the first jury or to forego that option and have a different jury decide his or her fate. Cf. Dinitz, 424 U.S. at 608; Jorn, 400 U.S. at 484-85. As a corollary, trial courts should allow time for such an objection prior to discharging the jury. This will give the trial court an opportunity to rethink its position and correct any error before discharging the jury, thereby avoiding a scenario in which the judge grants a mistrial but later realizes that there was no manifest necessity and precludes the State from achieving its interests in prosecuting offenders in fair trials. See Jorn, 400 U.S. at 473 (trial judge who declared mistrial also granted defendant's subsequent motion to dismiss on double jeopardy grounds); State v. Glasscock, 759 N.E.2d 1170, 1172-74 (Ind. Ct. App. 2001) (same); cf. Konopasek v. State, 946 N.E.2d 23, 27 (Ind. 2011) (explaining and applying contemporaneous-objection rule). Requiring the defendant to make a choice also avoids transforming the protection against double jeopardy into an abusive weapon used by a defendant

---

[8] This rule is not inconsistent with our prior decisions. This Court has held for well over a century that a defendant waives his or her double jeopardy claim if a timely objection is not asserted, but in all of those cases the defendant had an adequate opportunity to object but failed to do so. See, e.g., Jester v. State, 551 N.E.2d 840, 842 (Ind. 1990); Lutes v. State, 272 Ind. 699, 702-05, 401 N.E.2d 671, 672-74 (1980); Holt v. State, 223 Ind. 217, 220-21, 59 N.E.2d 563, 564-65 (1945); Harlan v. State, 190 Ind. 322, 328-29, 130 N.E. 413, 416 (1921); Fowler v. State, 85 Ind. 538, 540-41 (1882); Long v. State, 46 Ind. 582, 585-86 (1874); Kingen v. State, 46 Ind. 132, 134 (1874); Ried v. State, 610 N.E.2d 275, 279 (Ind. Ct. App.), summarily aff'd, 615 N.E.2d 893 (Ind. 1993); cf. Reynolds v. Dowd, 232 Ind. 593, 594-95, 114 N.E.2d 640, 641-42 (1953) (holding double jeopardy claim was unavailable in habeas proceeding where defendant failed to raise it at any point prior to habeas action).

to avoid prosecution, particularly when, as here, the mistrial is precipitated by defense counsel's conduct. Cf. Camden, 892 F.2d at 620 (Posner, J., dissenting) (noting that the cases relied upon by the majority were distinguishable because, unlike the case at hand, underlying those cases was "a concern with the strategic employment of silence").

On the other hand, we acknowledge that the circumstances surrounding a trial court's declaration of a mistrial may not present an opportunity for raising a timely objection prior to the jury's discharge. In such cases, a failure to object will not be deemed to be consent unless the totality of the circumstances otherwise shows that the defendant consented to the mistrial. See, e.g., Gantley, 172 F.3d at 429; Goldstein, 479 F.2d at 1067-68.

Although we think it is a close call, we hold that Brock did not consent to the trial judge's declaration of a mistrial. This case presents somewhat of a wrinkle because the trial judge's declaration of a mistrial was in part a grant of the State's motion and in part sua sponte. As soon as the State moved for a mistrial, the trial judge proposed reopening the evidence and defense counsel assented to that – which suggests that Brock was willing to try something other than a mistrial. Once they left sidebar, the trial court formally denied the State's motion. At this point there had been no need for defense counsel to object given the trial court's quick denial of the State's motion. The court then took a recess, but it did not suggest that it would be reconsidering the State's motion during the recess. Rather, it took the recess to allow the parties to prepare to reopen the evidence. When the court and jury returned from recess, the trial court abruptly declared that, upon further reflection, it was going to grant the State's motion for a mistrial. The trial judge declared the mistrial and discharged the jury without allowing any response from the parties. It was not until the jury had been discharged that the defendant had an opportunity to object. Admittedly, the defendant did not at that point object, but this is not determinative here.[9] The defendant had no clue that the trial judge would declare a mistrial after having denied the motion moments earlier. Cf. Puleo, 817 F.2d at 705. Moreover, it is apparent that the trial was

---

[9] Although an objection at this juncture would be unlikely to provide the trial court an opportunity to recall the jury, it may allow the trial judge an opportunity to make a record sufficient for a reviewing court to determine whether the judge abused his or her discretion. See Camden, 892 F.2d at 620-21 (Posner, J., dissenting).

10

going in Brock's favor at that point, in large part because of his counsel's improper comments.[10] In point of fact, the State's reason for requesting a mistrial was because it did not think it could cure its case in the face of defense counsel's prejudicial comments.

In sum, Brock's failure to object cannot be taken as tacit consent to mistrial in this case because there was no opportunity to raise a contemporaneous objection. And the totality of the circumstances fails to reveal that Brock otherwise consented to the declaration of a mistrial.

## II

Having concluded that Brock did not consent to the mistrial, we proceed to consider whether the mistrial was justified by a "manifest necessity." The State's request for mistrial was prompted by defense counsel's comments concerning the elements required to convict Brock and implicating that the State had acted deviously in introducing into evidence a heavily redacted version of Brock's driving record. Brock's main argument on appeal is that his trial counsel's comments were not improper. We therefore consider the propriety of defense counsel's comments before considering whether the trial court abused its discretion in declaring a mistrial.

## A

Brock was charged with violating Indiana Code section 9-30-10-17, which provides that "[a] person who operates a motor vehicle after the person's driving privileges are forfeited for life under [IC 9-30-10-16] of this chapter . . . commits a Class C felony." The Court of Appeals is split on which elements are required to sustain a conviction under this statute. Several decisions have held that the State must prove three elements to convict a person of violating this section: (1) the accused operated a motor vehicle; (2) after his or her driving privileges had been

---

[10] In theory, it could be argued that a defendant consents to a mistrial whenever it is caused by defense error. But such a rule would not take account for the fact that many errors are not motivated by bad faith and that counsel for both sides operates in an imperfect world. See Jorn, 400 U.S. at 486. Moreover, such a rule has been implicitly rejected by the United States Supreme Court because it has considered whether manifest necessity exists for a mistrial where defense counsel caused the error. See, e.g., Washington, 434 U.S. at 499, 514-16. We find it unnecessary to consider in this case whether a defendant consents to mistrial when defense counsel intentionally goads the prosecution into moving for a mistrial or the judge into declaring a mistrial sua sponte. Cf. Kennedy, 456 U.S. at 676.

forfeited for life; and (3) he or she knew or should have known that his or her driving privileges were forfeited. Arthur v. State, 824 N.E.2d 383, 388 (Ind. Ct. App. 2005), trans. denied; Austin v. State, 700 N.E.2d 1191, 1192 (Ind. Ct. App. 1998), trans. denied; Bates v. State, 650 N.E.2d 754, 756-57 (Ind. Ct. App. 1995). In Pierce v. State, however, the Court of Appeals rejected the argument that section 17 contains a knowledge requirement and held that the State must prove only two elements to convict under this section: (1) "that the defendant operated a motor vehicle," and (2) "that the defendant's driving privileges had been forfeited for life." 737 N.E.2d 1211, 1213-14 (Ind. Ct. App. 2000), trans. denied; see also Ford v. State, 711 N.E.2d 86, 88 (Ind. Ct. App. 1999), trans. denied.

We think that the panels in Pierce and Ford got it right. Although Indiana Code section 9-30-10-16 contains a knowledge requirement, the plain text of section 17 makes absolutely no reference to a knowledge requirement. And section 17's reference to section 16 does not incorporate the knowledge requirement of section 16 into section 17. That is, section 16 is not a lesser included offense of section 17. Had the General Assembly intended section 17 to have a knowledge requirement, it would have done so, like it did for section 16. Moreover, it is reasonable to conclude that the General Assembly intended section 17 to be a strict liability offense. The only persons likely to be subject to section 17 are those who have had numerous severe traffic violations. They are recidivists who have already lost their privileges for life. We think the General Assembly concluded that, by the time section 17 comes into play, proof of knowledge is not necessary to establish culpability. We therefore believe that it would subvert legislative intent for us to graft a knowledge requirement onto the statute.

Defense counsel also argued that the State had to submit evidence expressly indicating that Brock's prior conviction was under section 16. We disagree for two reasons. First, prior to July 1, 2004, a conviction under section 16 was the only way an HTV could have his or her driving privileges suspended for life. In 2004, the General Assembly amended Indiana Code section 9-30-10-5(b) to provide that the BMV has the authority to impose a lifetime suspension on an HTV in certain circumstances, without a conviction under section 16. Pub. L. No. 82-2004, § 3, 2004 Ind. Acts 1223, 1224 (codified as amended at I.C. § 9-30-10-5(b)(2)). And even after the 2004 amendment, the only conviction for which an HTV's privileges are suspended for life is

12

under section 16. <u>See</u> I.C. § 9-30-10-16(c). The redacted driving record submitted by the State showed both that Brock had been <u>convicted</u> in the Jay Circuit Court on June 14, 1993, for felony operating a motor vehicle while an HTV and that his license had been suspended indefinitely on the same date and for the same offense.

Second, Indiana Code section 9-30-3-15 provides that a certified computer printout of the relevant portions of the defendant's driving record is prima facie evidence of a prior conviction. Specifically, it provides as follows:

> In a proceeding, prosecution, or hearing where the prosecuting attorney must prove that the defendant had a prior conviction for an offense under this title, the relevant portions of a certified computer printout or electronic copy as set forth in IC 9-14-3-4 made from the records of the bureau are admissible as prima facie evidence of the prior conviction. However, the prosecuting attorney must establish that the document identifies the defendant by the defendant's driving license number or by any other identification method utilized by the bureau.

I.C. § 9-30-3-15. Considering this statute in concert with the fact that there is only one way in which Brock's driving record could have appeared as it did, we conclude that the State was not required to offer evidence referring explicitly to section 16. <u>See</u> <u>Pierce</u>, 737 N.E.2d at 1213; <u>cf.</u> <u>Bates</u>, 650 N.E.2d at 757 n.4 (holding that even though the State must prove defendant knew his privileges had been suspended for life, it was not required to prove that the defendant knew that the suspension was pursuant to a particular statute). Accordingly, defense counsel's protestations to the contrary were improper.[11] We also note that defense counsel's recourse was an appeal to the Court of Appeals if a verdict was rendered against his client; once the trial court decided the issue, defense counsel should have preserved the issue for appeal by raising an objection on the record and then proceeded with his argument without disregard for the trial court's ruling.

Finally, it goes without saying that defense counsel's comments concerning the redacted material on Brock's driving record were improper. It would be absurd to allow the defendant to suggest that the State acted prejudicially in preventing evidence highly prejudicial to him from

---

[11] Brock's trial counsel at no point argued that the State had failed to connect Brock with the driving record. We therefore do not consider that issue.

reaching the jury.  As noted in footnote 1, supra, Brock's unredacted driving record reveals a lengthy history of irresponsibility and blatant disregard for Indiana traffic laws.  In sum, we conclude that Brock's trial counsel's comments to the jury were improper.  We now turn to consider whether these improper comments constituted a manifest necessity for declaring a mistrial.

## B

A mistrial granted over the defendant's objection and in the absence of manifest necessity acts as an acquittal and bars reprosecution for the same offense.  Jackson v. State, 925 N.E.2d 369, 373 (Ind. 2010); Brown v. State, 703 N.E.2d 1010, 1015 (Ind. 1998); Wright v. State, 593 N.E.2d 1192, 1196 (Ind. 1992).  Justice Story articulated the "manifest necessity" standard more than 185 years ago and it remains the law today:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.  They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere.  To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner.  But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office. . . .

United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824) (emphasis added); see Renico v. Lett, 559 U.S. ___, 130 S. Ct. 1855, 1862-63 (2010) (applying Perez in a habeas case as the "clearly established Federal law").  As suggested in Perez, the trial court has broad discretion in determining whether the totality of the circumstances shows that there is a manifest necessity for declaring a mistrial, and this is not "a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge."  Arizona v. Washington, 434 U.S. 497, 506 (1978).  Moreover, "manifest necessity" is not a literal standard, and a declaration of mistrial will be found manifestly necessary if there is a "high degree" of necessity.  Id.  We therefore review a

14

trial judge's decision to grant a mistrial for an abuse of discretion. Id. at 506-10; Jackson, 925 N.E.2d at 373; Brown, 703 N.E.2d at 1015.

In Jackson, we identified various considerations that factor into our review. If the reason for the mistrial is due to prosecutorial error, then "the State must demonstrate a 'much higher' degree of necessity for the mistrial" because such a situation suggests that the State would like a do-over so that it may put on a stronger case. Jackson, 925 N.E.2d at 373 (citations omitted); Brown, 703 N.E.2d at 1015-16; see also Washington, 434 U.S. at 507 (noting that more searching appellate review should be applied in "cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence"). Additionally, we examine the necessity of the mistrial in light of the steps taken by the trial court to avoid a mistrial, including whether counsel had an opportunity to be heard, whether the trial court considered alternatives, and whether the trial court's decision came after adequate reflection. Jackson, 925 N.E.2d at 374 (citing United States v. Charlton, 502 F.3d 1, 5 (1st Cir. 2007)). We also consider the burden imposed by the mistrial and, as a general matter, the values protected by the Double Jeopardy Clause "'are not as great when the trial is terminated shortly after jeopardy has attached as opposed to at a later stage in the trial.'" Id. (quoting Brown, 703 N.E.2d at 1016 n.5).

In this case, the mistrial was granted because of defense counsel's repeated improper comments to the jury, which, of course, were not the State's fault. The trial judge gave defense counsel several chances to explain himself and to continue his closing without confusing the jury. Each time, defense counsel seemingly ignored the trial judge's directions and continued arguing to the jury that the State was required to prove additional elements. And his final comment to the jury was calculated to bias the jury against the State by suggesting that the State had hidden evidence beneficial to Brock by submitting a redacted driving record when, in fact, the redacted material was highly prejudicial to Brock. Cf. Washington, 434 U.S. at 511 (noting that a trial judge's evaluation of potential juror bias is entitled to "the highest degree of respect"). When the State first moved for a mistrial, the trial judge denied the motion and chose an alternative route – the evidence would be reopened and closing arguments would begin anew. After further reflection during a recess, the trial judge returned and decided to change his mind. The record is unclear as to why he changed his mind, but this is not fatal, for there is more than ade-

quate evidence in the record for us to conclude that the trial judge did not abuse his discretion in granting the mistrial. Finally, although the mistrial was declared during closing arguments, the burden of the mistrial was not so great considering that Brock himself had delayed trial for more than two-and-a-half years, the first trial lasted only a few hours over two days, the second trial occurred less than three weeks later, and the mistrial was due to defense counsel's improper conduct.

We hold that the trial judge did not abuse his discretion in declaring a mistrial. Brock's trial counsel made highly prejudicial comments during his closing argument to the jury. Moreover, had the trial judge allowed the first trial to proceed and had defense counsel's erroneous comments confused the jury to the point that it acquitted, the State would have been precluded from appealing that decision. See, e.g., Fong Foo v. United States, 369 U.S. 141, 143 (1962) (per curiam); Green v. United States, 355 U.S. 184, 190-91 (1957); United States v. Ball, 163 U.S. 662, 671 (1896). Although another trial judge might have employed another method to reduce the effects of defense counsel's comments, the trial judge here did not abuse his discretion in granting the mistrial. Cf. Washington, 434 U.S. at 511.

**Conclusion**

We hold that the defendant's second trial was not barred by the Double Jeopardy Clause of the Fifth Amendment and therefore affirm his conviction.

Shepard, C.J., and Dickson, Rucker, and David, JJ., concur.