


I N   T H E

# Court of Appeals of Indiana

Jermaine Garnes,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

March 11, 2024

Court of Appeals Case No.
23A-CR-606

Appeal from the Tippecanoe Superior Court

The Honorable Randy J. Williams, Judge

Trial Court Cause No.
79D01-2108-MR-8

---

**Opinion by Judge Weissmann**
Chief Judge Altice and Judge Kenworthy concur.

**Weissmann, Judge.**

Criminal defendants have the constitutional right to present a complete defense. But this right is not absolute. Jermaine Garnes contends that he was denied a complete defense at his trial for the murder of 3-year-old Z.C. when a mistrial was declared after he informed the jury that the child's mother had already been convicted of murder. Garnes was subsequently retried and convicted of murder at his second trial.

Garnes makes two arguments on appeal. The first is that his conviction for murder should be vacated on double jeopardy grounds because the trial court erred in granting the mistrial. His second argument claims that his maximum sentence is inappropriate. Finding no merit to either, we affirm.

## Facts

In the summer of 2021, Garnes lived with his girlfriend, Crystal Cox, and her three-year-old son, Z.C. One evening, Garnes called 911 and reported that Z.C. was not breathing. Although the operator instructed Garnes and Cox on administering CPR, the paramedics arrived to find no one doing so, and that Z.C. was dead. Z.C.'s body was "cold" and "mottling" with bruises covering nearly all of his body. Tr. Vol. III, p. 86. An autopsy revealed extensive internal injuries, consistent with a "very, very high force to the front or to the side of the body." *Id.* at 114-15.

The State charged Garnes with murder, as well as two Level 1 felonies—neglect of a dependent resulting in death and aggravated battery—and battery resulting

in death to a person less than 14 years old, a Level 2 felony.[1] A few days before Garnes's trial, a newspaper reported that a jury had found Cox guilty of murder. In response, the trial court, with the parties' agreement, questioned potential jurors about their knowledge of the article and Cox's conviction. Four prospective jurors had read the article online and were excused for cause. Although two more potential jurors revealed they were generally aware of Cox's case, they had not read the article. The trial court denied Garnes's motion to excuse the two jurors for cause.

[5] A full jury was seated, and Garnes's trial began. During opening arguments, Garnes's counsel highlighted Z.C.'s alleged frailties and Cox's involvement. Then said:

> there is no dispute that [Z.C.] has numerous bruises on his body and ultimately died from internal injuries, there is no dispute that he died while in the care of his mother, Crystal Cox, and the Defendant Jermaine Garnes. Most significantly it is not in dispute that Crystal Cox was convicted of murdering [Z.C.].

Tr. Vol. II, pp. 158-59.

[6] The State immediately objected and requested a sidebar outside the jury's presence, which the trial court granted. The State expressed disbelief that Garnes's counsel had mentioned Cox's conviction in his opening argument, given the efforts to screen anyone from the jury with this information. The State

---

[1] Cox was charged with similar crimes.

also emphasized that the information was likely inadmissible. Garnes's counsel rebutted that no motion in limine prevented the information from coming in at trial and that the evidence would be admissible. The trial court tabled the issue until both sides had time to research it and the State could decide whether to move for a mistrial.

[7] The trial continued the rest of the morning. But following an extended afternoon break, the State moved for a mistrial. The trial court granted the motion. It reasoned that Garnes's opening statement was "intended as a trial tactic" to inform the jury of the prior conviction even though the parties and the trial court had tried to prevent the jury from learning about the prior conviction. *Id.* at 219-20.

[8] After the trial court declared a mistrial, Garnes moved to dismiss his case. He claimed that double jeopardy protections attached when the jury was sworn in and that further prosecution was prohibited. The trial court rejected this motion because it found the mistrial proper. It reiterated its findings that Garnes's "impermissible statements were a deliberate trial tactic, a mischaracterization, and improper," and were "not inadvertent, but a calculated statement made presumably as a trial tactic to shift the blame to the mother of the child." App. Vol. II, p. 139. The trial court also concluded that no admonishment or alternative option would have fixed the "prejudicial effect the statements likely had on the jury." *Id.* at 138-39.

After a second trial on the same four charges, the jury found Garnes guilty on all counts. The trial court sentenced Garnes to 65 years imprisonment, with one year suspended.

## Discussion and Decision

We address Garnes's arguments in multiple steps. The first and central issue here is whether the trial court properly granted the mistrial. Deciding this question raises two derivative issues: (1) whether evidence of Cox's conviction was admissible; and (2) whether a "manifest necessity" justified the mistrial. Because we affirm the trial court's judgment in declaring a mistrial during the first trial, Garnes's conviction from the second trial stands. We then conclude that his sentence is not inappropriate.

## I. The Trial Court Properly Granted a Mistrial

Garnes argues that the trial court improperly declared a mistrial and that his second trial therefore violated his Fifth Amendment right "not to be placed twice in jeopardy."[2] *Brock v. State*, 955 N.E.2d 195, 199 (Ind. 2011). A mistrial is a serious remedy, particularly so after the jury has been seated and double jeopardy protections have attached. *Id.* "Once jeopardy has attached, the trial court may not grant a mistrial over a defendant's objection unless 'manifest necessity' for the mistrial is found." *Brown v. State*, 703 N.E.2d 1010, 1015 (Ind.

---

[2] The Double Jeopardy Clause of the Fifth Amendment, applicable here through the Fourteenth Amendment, provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

1998). A trial court's decision to grant a mistrial is reviewed for an abuse of discretion. *Brock*, 955 N.E.2d 195, 207 (Ind. 2011).

[12] Garnes asserts that because evidence of Cox's murder conviction was admissible, his trial counsel's reference to it during opening arguments in Garnes's first trial was not grounds for a mistrial. Thus, we begin with the evidentiary issue and then proceed to whether the trial court abused its discretion in declaring a mistrial.

## A. Evidence of Cox's Conviction Was Inadmissible

[13] Garnes contends the evidence of Cox's conviction was admissible because he intended to offer the evidence "to show that someone else" murdered Z.C. Appellant's Br., p. 16. In that vein, Garnes asserts that a criminal defendant "has the absolute right to present evidence" that someone else committed the charged crime." *Id.* While the right to present a defense is an important right, it is not without limitation.

[14] Criminal defendants cannot present any evidence or make any arguments they please while presenting their defense. *See generally Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (noting that "well-established rules of evidence permit trial judges to exclude evidence"); *see also Kubsch v. State*, 784 N.E.2d 905, 926 (Ind. Ct. App. 2003) ("Regardless of [the defense's theory], evidence to support the theory must comply with applicable evidentiary rules."). And the argument Garnes sought to make—that another person committed the crime—is, at bottom, no different than any other argument a defendant might make. *Holmes*,

547 U.S. at 327 (finding that application of evidentiary rules "regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged" has been "widely accepted").

[15] Evidence of Cox's conviction was inadmissible here. As both parties agree, the reverse of this situation—where the prosecution attempts to introduce evidence of an accomplice or co-defendant's conviction—is typically found improper if the evidence speaks only to "the fact that others indicted for the same offense had been found guilty." *Moore v. State*, 515 N.E.2d 1099, 1102 (Ind. 1987) (quoting *Lincoln v. State*, 133 N.E. 351 (Ind. 1921)).

[16] Indeed, this Court has already found that "the same rationale applies to make improper any attempt by a defendant to disclose the previous conviction or guilty plea of a co-defendant in hopes of establishing his innocence of the crime charged." *Jefferson v. State*, 399 N.E.2d 816, 825 (Ind. Ct. App. 1980). Of course, the propriety of any such action still "depends on the facts and circumstances surrounding the case." *Moore*, 515 N.E.2d at 1103 (citing *Zarnick v. State*, 361 N.E.2d 202, 216 (Ind. Ct. App. 1977)). The facts and circumstances of this case support the trial court's decision to find evidence of Cox's conviction inadmissible.

[17] First, Cox's conviction was not relevant evidence at Garnes's trial. Evidence is relevant if it has "any tendency to make a fact more or less probable" and is "of

consequence" in resolving the issue.[3] Ind. Evidence Rule 401. If evidence is not relevant, it is inadmissible. Evid. R. 402.

[18] Our Supreme Court has already spoken on the related issue of introducing evidence of a co-defendant's guilty plea and indicated that "in many cases" such evidence "has been considered irrelevant and inadmissible." *Moore*, 515 N.E.2d at 1102 (collecting cases). That is the case here. Cox's conviction, like the guilty plea in *Moore*, had no bearing on Garnes's guilt or innocence at his trial. In other words, it was "not substantive evidence of the defendant's guilt or innocence." *Phelps v. State*, 453 N.E.2d 350, 354 (Ind. Ct. App. 1983); *Jefferson*, 399 N.E.2d at 825.

[19] This is so because Cox's conviction does not show that she alone murdered Z.C. *Cf. Allen v. State*, 813 N.E.2d 349, 361-66 (Ind. Ct. App. 2004) (holding that a defendant could present evidence that others committed the crime with him). In fact, Cox was convicted of murder on the theory that she was Garnes's accomplice; in effect, that she and Garnes murdered Z.C. together. *See Cox v. State*, 210 N.E.3d 305, *2 (Ind. Ct. App. 2023) (mem.) (noting that in prosecuting Cox, the State proceeded "under a theory that Garnes inflicted the

---

[3] We note that many of the cases cited within this opinion predate the adoption of Indiana's Rules of Evidence in 1994. In general, caution is warranted when citing to such cases. *See Joyner v. State*, 678 N.E.2d 386, 389 n.2 (Ind. 1997) (observing that "long-standing rules of evidence have been subsumed or eliminated by the adoption of our new rules of evidence"). But here, the governing standard is, for our purposes, relatively unchanged. *Compare* Ind. Evidence Rule 401 *with Moore*, 515 N.E.2d at 1103 ("Evidence is relevant if it tends to prove or disprove an issue material to the case.").

fatal blows and that Cox acted as an accessory to Garnes in committing the murder"). Cox's conviction therefore is unrelated to Garnes's guilt.

[20] Having established that it was improper for Garnes's counsel to inform the jury of Cox's conviction, we turn to the next step: whether a mistrial was required.

## B. A Manifest Necessity Requiring a Mistrial Existed

[21] When a defendant objects to a motion for mistrial, as Garnes did here, there must exist a "manifest necessity" to support the mistrial. A "manifest necessity" exists when, "the ends of public justice would otherwise be defeated" by continuing the trial, through either jury bias or prejudice. *Jackson v. State*, 925 N.E.2d 369, 373 (Ind. 2010) (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824)). This standard does not require that the mistrial be "necessary" in a "strict literal sense," given "the difficulty in measuring jury bias." *Id.* (quoting *Arizona v. Washington*, 434 U.S. 505, 511 (1978)).

[22] Garnes argues that a manifest necessity did not exist because the trial court could have cured any prejudice with a simple admonishment instructing the jury to ignore the reference to Cox's conviction. Garnes relies on the fact that admonishments are generally the preferred way to cure an error that may bias the jury. *See Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006) ("When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury."). But in all events, "the reviewing court must 'accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been

affected by the improper comment.'" *Jackson*, 925 N.E.2d at 373 (quoting *Washington*, 434 U.S. at 511).

[23] Speaking to a similar situation, the United States Supreme Court reasoned that "[a]n improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal." *Washington*, 434 U.S. at 512. Although the trial court "may instruct the jury to disregard the improper comment," the court "must have the power to declare a mistrial in appropriate cases." *Id.* at 513. Otherwise, "unscrupulous defense counsel [will] be allowed an unfair advantage." *Id.*

[24] The trial court acted within its discretion in declaring a mistrial. With the agreement of both parties, extensive efforts were undertaken during voir dire to ensure the jury was not tainted by the public news of Cox's conviction. But these efforts were undone in an instant when Garnes's counsel referenced that conviction during opening arguments. We see nothing in the record to disprove the trial court's finding that this was a deliberate strategy by Garnes's counsel "to shift the blame to [Cox]" and that only a mistrial could remedy the fear of a tainted jury. App. Vol. II, p. 139.

[25] Accordingly, we affirm the trial court's judgment in declaring a mistrial and find no double jeopardy issue with Garnes's second trial and consequent conviction.

## II. Garnes's Sentence Is Not Inappropriate

Lastly, Garnes challenges his sentence under Indiana Appellate Rule 7(B). Under this rule, we may revise a sentence if "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). Our aim in reviewing sentence appropriateness is to "attempt to leaven the outliers" and "not to achieve a perceived 'correct' sentence." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). We therefore defer substantially to the trial court's sentencing decision, which prevails unless "overcome by compelling evidence portraying in a positive light the nature of the offense . . . and the defendant's character." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

The nature of Garnes's offense supports his 65-year sentence. This was a heinous crime. Garnes' sole claim is that because Cox was also convicted of Z.C.'s murder, some of the blame must be cast her way. But the underlying facts show Garnes was the person primarily responsible for 3-year-old Z.C.'s injuries. Garnes's acts included "punching" and "grabbing" the child with the "extreme amount of force" necessary to cause his fatal injuries. Tr. Vol. III, pp. 101-04, 145. Thus, we find nothing about the nature of Garnes's sentence inappropriate.

Similarly, Garnes's character does not compel sentencing relief. This analysis requires consideration of a wide range of facts, such as Garnes's "criminal history, background, past rehabilitative efforts, and remorse." *Pritcher v. State*, 208 N.E.3d 656, 668 (Ind. Ct. App. 2023). Garnes has a history of similar

violent conduct including convictions for domestic violence and assault and battery. As the State notes, it is particularly troubling that, as remediation for his 2008 conviction for domestic violence, Garnes was ordered to complete a program aimed at limiting violent behavior. In sum, Garnes's character does not warrant finding his sentence inappropriate.

## Conclusion

[29] The trial court did not abuse its discretion in declaring a mistrial in Garnes's first trial. Thus, his second trial did not violate double jeopardy protections and Garnes's murder conviction is affirmed. We also affirm his 65-year sentence, finding it is not inappropriate in light of Garnes's character and the nature of his offense.

Altice, C.J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana