# United States Court of Appeals
## For the First Circuit

No. 01-2565

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ TORIBIO-LUGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Selya, Lynch and Lipez,

Circuit Judges.

Joannie Plaza-Martinez, Assistant Federal Public Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, was on brief, for appellant.
Irene C. Feldman, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, Jorge E. Vega-Pacheco, Chief, Criminal Division, and Thomas F. Klumper, Assistant United States Attorney, were on brief, for appellee.

July 21, 2004

**SELYA**, <u>Circuit Judge</u>.  Four days into a criminal trial, the district court discovered that a juror had been absent for some time and, having previously discharged the lone alternate, declared a mistrial sua sponte.  Defendant-appellant José Toribio-Lugo thereafter moved to dismiss the indictment on double jeopardy grounds.  The district court denied that motion.  This appeal ensued.  After careful review, we conclude that the lower court erred in refusing to dismiss the indictment.

## I.  BACKGROUND

On June 6, 2001, a federal grand jury indicted the appellant for various narcotics offenses.  <u>See</u>, <u>e.g.</u>, 21 U.S.C. §§ 841(a)(1), 952(a).  The court empaneled a jury of twelve, plus one alternate.  Trial commenced on August 13, 2001.  The alternate juror experienced a personal problem and the judge excused her on the second day of trial.

At the start of the fourth day, the courtroom deputy informed the judge that only eleven jurors were present.  The judge immediately consulted with both the prosecutor and the appellant's lawyers.  He outlined two options:  either postpone the trial until the twelfth juror could be located or proceed with a jury of eleven.  <u>See</u> Fed. R. Crim. P. 23(b)(2)(A) (permitting the parties in a criminal case to stipulate to trial by a jury of fewer than twelve at any time before the verdict).  Defense counsel asked why the juror was missing and, in virtually the same breath, began to

express her viewpoint. She stated: "The thing is I'm thinking about --". That was as far as she got. The district judge interrupted, declaring: "This is very simple. [The missing juror's] not here. She's not here. She might be dead. She may be ill. It doesn't make any difference." Chastened, defense counsel conferred with her client and informed the judge that the appellant did not wish to proceed at that moment with eleven jurors, but, rather, would "like to wait for twelve jurors, a twelve-member jury." The judge then terminated the sidebar conference, announcing that the trial would be postponed until the twelfth juror could be found.

Almost immediately thereafter, the judge learned that the problem was more complex than he initially had thought. Thus, he excused the jury and told the attorneys what he had learned: that the missing juror had been absent during some or all of the earlier portions of the trial. The judge then announced that he was going to declare a mistrial because only eleven jurors had heard the evidence and he did not believe that there was any way to cure that defect. The prosecutor promptly asked for a new trial date, but the judge, seemingly anticipating a double jeopardy challenge, declined the request. Defense counsel tried to articulate her client's position. She stated: "Our position is that --". The judge once again cut her off mid-sentence, saying: "Counsel.

Wait." He then began questioning the courtroom deputy about the number of jurors originally empaneled.

The shape of the fiasco soon emerged. On the morning of August 13 (the first day of trial), twelve jurors and one alternate were sworn. For reasons that remain obscure, one of the empaneled jurors vanished later that morning. No one — neither the prosecutor, nor defense counsel, nor the courtroom deputy, nor the judge — noticed the juror's absence, and the trial proceeded apace. This state of blissful ignorance still existed when, on the second trial day, the judge, with the assent of both parties, dismissed the alternate juror. The upshot was that only twelve jurors had begun to hear evidence in the case and only eleven of them had been present from the second day forward.

After recounting this bizarre sequence of events, the district judge expressed some uncertainty about whether, in the event of a mistrial, the Double Jeopardy Clause would bar retrial of the appellant. The judge invited the attorneys to brief the issue. Defense counsel again endeavored to be heard, but the judge again thwarted her attempt. He then reconvened the jury and, acting sua sponte, declared a mistrial.

When thereafter the government moved for a new trial date, the appellant objected and cross-moved for dismissal of the indictment on double jeopardy grounds. Briefs were submitted. On September 24, 2001, the district judge denied the motion to

dismiss.[1]  United States v. Toribio-Lugo, 164 F. Supp. 2d 251 (D.P.R. 2001).  The judge predicated his ruling on two alternative grounds.  First, he concluded that a mistrial was required by manifest necessity because only eleven jurors remained and the appellant had refused to proceed with fewer than twelve.  Id. at 253-54.  Second, he concluded that the appellant had, in all events, consented to the declaration of a mistrial.  Id. at 254-55. This appeal followed.

## II.  ANALYSIS

In the ordinary course, a defendant cannot pursue an immediate appeal from an interlocutory order in a criminal case. Like virtually every general rule, this rule admits of various exceptions — and one such exception allows immediate appeals from denials of motions to dismiss premised on colorable double jeopardy grounds.  See Abney v. United States, 431 U.S. 651, 662 (1977); United States v. Keene, 287 F.3d 229, 232 (1st Cir. 2002).  This case comes within that exception.  We turn, then, to the merits of the appeal.

### A.  Background Principles.

The Double Jeopardy Clause ensures that no person shall "be subject for the same offence to be twice put in jeopardy of

_____

[1]On the same date, the district judge rescheduled the trial. The judge thereafter denied the appellant's motion to stay retrial pending appeal.  The appellant has since been retried, convicted, and sentenced.  He is presently serving that sentence.

life or limb." U.S. Const. amend. V. In a jury trial, jeopardy attaches when the jury is sworn. Crist v. Bretz, 437 U.S. 28, 35 (1978). That jeopardy attaches at this early stage, rather than at final judgment, is a recognition of the defendant's prized right to have his trial, once under way, completed by a particular trier. Arizona v. Washington, 434 U.S. 497, 503 (1978).

The prophylaxis of the Double Jeopardy Clause is threefold. See United States v. Ortiz-Alarcon, 917 F.2d 651, 653 (1st Cir. 1990) (delineating the three main types of protection conferred). One such protection restrains the government from using its power and resources to subject a defendant to serial prosecutions, thus prolonging his ordeal and unfairly enhancing the prospect of his ultimate conviction. Green v. United States, 355 U.S. 184, 187-88 (1957). Despite its importance, however, the protection against serial prosecutions is not absolute.

Mistrials exemplify the need for exceptions. When a mistrial is declared before the jury returns its verdict, jeopardy may or may not attach. In other words, double jeopardy principles do not automatically bar reprosecution, Washington, 434 U.S. at 505, and the circumstances of each case must be examined to determine where that case falls along the double jeopardy continuum. If, say, the defendant has consented to a mistrial or manifest necessity has precipitated it, the prosecution ordinarily may proceed anew. See United States v. Dinitz, 424 U.S. 600, 611-

12 (1976) (finding no double jeopardy bar where the defendant had moved for a mistrial); United States v. Perez, 22 U.S. (9 Wheat.) 579, 579-80 (1824) (finding no double jeopardy bar where the existence of a deadlocked jury made a mistrial manifestly necessary). These outcomes reflect an understanding that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Wade v. Hunter, 336 U.S. 684, 689 (1949).

## B. Standard of Review.

The baseline standard of review applicable to a denial of a motion to dismiss on double jeopardy grounds following the declaration of a mistrial is abuse of discretion. See, e.g., Washington, 434 U.S. at 514; Keene, 287 F.3d at 233. In light of the important constitutional right involved, appellate review must ensure that the trial court indulged in a "scrupulous exercise of judicial discretion." United States v. Jorn, 400 U.S. 470, 485 (1971) (plurality op.). This entails accepting the trial court's factual findings unless they are clearly erroneous. United States v. Bradshaw, 281 F.3d 278, 291 (1st Cir.), cert. denied, 537 U.S. 1049 (2002). Articulations of law engender de novo review. Keene, 287 F.3d at 233. A mistake of law is, a fortiori, an abuse of discretion. United States v. Snyder, 136 F.3d 65, 67 (1st Cir. 1998).

Here, the threshold determination that the appellant consented to the declaration of a mistrial has both factual and legal components. Consistent with the paradigm limned above, we review the district court's factual findings for clear error. Whether the facts as found add up to consent is a legal determination that we review de novo. Cf. Ornelas v. United States, 517 U.S. 690, 696-98 (1996) (applying this multifaceted standard of review to determinations of probable cause).

### C. **Manifest Necessity**.

Like the district court, we first inquire into the existence vel non of manifest necessity (after all, if a mistrial was occasioned by manifest necessity, then the question of consent becomes immaterial). The Supreme Court initially coined the phrase "manifest necessity" in the early nineteenth century. In Perez, Justice Story wrote:

> [T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; . . . .

22 U.S. (9 Wheat.) at 580. Attempts to define the term more precisely — beyond tautological acknowledgments that manifest

-8-

necessity demands a "high degree" of necessity, Washington, 434 U.S. at 506 — have not been helpful. Experience teaches that there is no mechanical rule for determining whether a mistrial is (or is not) supported by manifest necessity. Illinois v. Somerville, 410 U.S. 458, 462 (1973). Consequently, "an appellate court's inquiry inevitably reduces to whether the district judge's declaration of a mistrial was reasonably necessary under all the circumstances." Keene, 287 F.3d at 234. Typically, this inquiry is informed by a triumvirate of interrelated factors: (i) whether alternatives to a mistrial were explored and exhausted; (ii) whether counsel had an opportunity to be heard; and (iii) whether the judge's decision was made after sufficient reflection. See id.; see also United States v. Simonetti, 998 F.2d 39, 41 (1st Cir. 1993).

In the case at hand, there was a clear alternative to a mistrial: proceeding with eleven jurors. Although the Criminal Rules normally require a twelve-member jury in a criminal case, see Fed. R. Crim. P. 23(b)(1), the parties may by agreement proceed with fewer than twelve, see Fed. R. Crim. P. 23(b)(2)(A). Thus, it was within the power of the district court to continue with eleven jurors as long as the parties consented to doing so.

The district court only tentatively explored — and never exhausted — that possibility. Instead, the court mistakenly concluded that the alternative was foreclosed by the appellant's initial expression of a preference to wait and see if the twelfth

-9-

juror could be found.  Toribio-Lugo, 164 F. Supp. 2d at 254.  As we explain below, the record does not support the court's conclusion that the expression of that preference slammed the door on the "jury of eleven" alternative.

When the district court discovered that a juror was missing, it presented the lawyers with two options:  either to postpone the proceedings until the vanished juror could be located or to proceed with a jury of eleven.  As between these two alternatives, the appellant chose the former.  The court never offered the appellant a choice between proceeding with eleven jurors or accepting a mistrial.  To cinch matters, the court, during the pertinent time frame, made no effort to ascertain the appellant's attitude or wishes with regard to the possibility of a mistrial.  In view of these omissions, the record compels a conclusion that the "jury of eleven" alternative was not adequately explored.

That conclusion is dispositive on this point.  Where there is a viable alternative to a mistrial and the district court fails adequately to explore it, a finding of manifest necessity cannot stand.  See, e.g., United States v. Ramirez, 884 F.2d 1524, 1529-30 (1st Cir. 1989); Brady v. Samaha, 667 F.2d 224, 229-30 (1st Cir. 1981).  This is such a case.  Accordingly, we reject the lower court's holding that its declaration of a mistrial was supported by manifest necessity.

-10-

### D. **Consent**.

In the absence of manifest necessity, double jeopardy principles require that a defendant retain primary control over whether or not to abort an ongoing trial. See Dinitz, 424 U.S. at 609. Withal, the protections of the Double Jeopardy Clause are at most a series of personal defenses, so they may be waived or vitiated by consent. Id. at 607; United States v. DiPietro, 936 F.2d 6, 9 (1st Cir. 1991). This brings us to the district court's alternate holding: that the appellant consented to the declaration of a mistrial.

In this context, consent may be express, such as where the defendant himself moves for a mistrial without having been goaded into doing so by misconduct attributable to the government. E.g., Dinitz, 424 U.S. at 607-12. The requisite consent may also be implied from a defendant's acts or failures to act, such as where the defendant sits silently by and does not object to the declaration of a mistrial even though he has a fair opportunity to do so. E.g., DiPietro, 936 F.2d at 9-11. Even so, the implication of consent is not lightly to be indulged. Any such finding must be consistent with the defendant's valued right to trial before a particular jury and his concomitant interest in deciding whether to take the case from that jury.

In this instance, the district court concluded that the appellant consented to the declaration of a mistrial twice over.

The court first extrapolated consent from the appellant's refusal to proceed with eleven jurors. Toribio-Lugo, 164 F. Supp. 2d at 254. For the reasons previously discussed, see supra Part II(C), we reject this extrapolation. Choosing to await the return of a missing juror over proceeding with a jury of eleven cannot reasonably be construed as consent to the declaration of a mistrial.

There is, however, more to this case. The district court also held that the appellant impliedly consented to the declaration of a mistrial by his silence when the court announced its intention to abort the proceedings. Id. The integrity of this finding presents a close question: as the district court correctly observed, defense counsel was present throughout and did not object to the declaration of a mistrial at any point.

Under most circumstances, such silence might well permit a finding of implied consent. See, e.g., United States v. Nichols, 977 F.2d 972, 974-75 (5th Cir. 1992) (per curiam); DiPietro, 936 F.2d at 11; Camden v. Circuit Court, 892 F.2d 610, 612-18 (7th Cir. 1989). But this case is different. Implying consent from a failure to object requires, at a bare minimum, that the defendant has had an adequate opportunity to register an effective objection. Compare DiPietro, 936 F.2d at 11 (implying consent where defense counsel sat in the courtroom for several minutes during the announcement of a mistrial without objecting), with Love v. Morton,

112 F.3d 131, 138-39 (3d Cir. 1997) (rejecting a finding of implied consent where the trial judge, in a state of grief after learning of a death in his family, abruptly ordered a mistrial and left the bench). Thus, the question reduces to whether defense counsel had a fair opportunity to object here.

The district court answered this question in the affirmative. The court found that defense counsel had several chances to voice an objection:

> For several minutes after the Court announced its decision to declare a mistrial, both defense counsel and government counsel remained in the courtroom. Defense counsel was present as the Court questioned the courtroom deputy as to the whereabouts of the missing juror. Next, defense counsel was present while the Court expressed its concern over [the] government's motion to set a new trial date. Finally, defense counsel was present as the Court explained the reason for the mistrial to the jury before discharging them. At no timefrom [sic] the moment the Court declared a mistrial to the moment it discharged the jury did defense counsel object to the mistrial.

Toribio-Lugo, 164 F. Supp. 2d at 254-55. We accept the court's factual findings that defense counsel was present at all relevant times and lodged no formal objection. In the circumstances of this case, however, those facts tell only a part of the story. And when the full panoply of facts is taken into account, the district court's conclusion that counsel had an adequate opportunity to object becomes insupportable.

-13-

The dynamics of a trial are important to its outcome. To do her job, a lawyer must be forceful, but she also must handle her relationship with the presiding judge with care. "Nothing goes further to disturb the proper atmosphere of a trial than [a lawyer's] reiterated insistence upon a position which the judge has once considered and decided." Keen v. Overseas Tankship Corp., 194 F.2d 515, 519 (2d Cir. 1952) (L. Hand, J.). It follows that when a lawyer repeatedly attempts to state her position but is repeatedly rebuffed, there will come a point at which further insistence can have deleterious consequences. A lawyer ought not to be required to persist stubbornly when the judge has made it perfectly clear that he does not wish to hear what the lawyer has to say. Cf. Douglas v. Alabama, 380 U.S. 415, 422 (1965) ("No legitimate state interest would have been served by requiring repetition of a patently futile objection, already thrice rejected, in a situation in which repeated objection might well affront the court or prejudice the jury beyond repair.").

In this case, defense counsel made either two or three attempts to be heard during the district court's sua sponte consideration of whether or not to declare a mistrial.[2] On each occasion, the court stopped counsel in her tracks, cutting her off

---

[2]The parties spar over whether the first attempt was part of that colloquy. For present purposes, that is a distinction without a difference. What counts is that the judge set the tone for the proceedings that followed by interrupting the lawyer in mid-sentence as she tried to state her client's position.

-14-

once when the court was addressing the issue of whether to wait for the missing juror and twice more when the court was addressing the issue of manifest necessity. It was only after these three attempts to state her position had been firmly rebuffed that defense counsel lapsed into silence. To hold, under these circumstances, that the appellant freely, albeit tacitly, consented to the discharging of the jury would mock reality and at the same time condone an unfortunate curtness on the part of the district court. We do not think that consent to a mistrial fairly can be inferred from enforced silence.

Let us be perfectly clear. We do not mean to say that being silenced by a judge always correlates with a lack of opportunity to object. See generally United States v. Mejia, 909 F.2d 242, 248 (7th Cir. 1990) (explaining that counsel "has a duty to object, and even at the risk of incurring the displeasure of the trial court, to insist upon his objection") (citations omitted). Here, however, a confluence of factors, especially the number of times that defense counsel was stymied and the relatively brief period of time that elapsed, militates strongly in favor of a conclusion that consent should not be implied.[3]

---

[3]In fairness, it seems quite likely that the court was laboring under the assumption that the appellant's earlier decision to wait for the missing juror and, concomitantly, to eschew proceeding with a jury of eleven at that point was an absolute rejection of the "jury of eleven" alternative. Ordinarily, counsel would bear some responsibility for clearing up this sort of confusion — and we might hesitate to find an abuse of discretion

With all due respect for the good faith of the district judge (which we do not doubt), we conclude that a fundamental constitutional right of an accused should not be snatched away in such uncertain circumstances. Consequently, we hold that the district court's second basis for its finding of consent is, like its first, untenable.

That ends the matter. In the absence of either manifest necessity or binding consent, jeopardy attached. Thus, the appellant's reprosecution was not constitutionally permissible.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we reverse the order appealed from and remand the case to the district court with directions to vacate the defendant's conviction. See supra note 1. The district court should thereupon dismiss the indictment.

**Reversed and remanded**.

---

had the lawyer sat idly by and lackadaisically allowed the court to proceed under a false assumption. Here, however, defense counsel thrice attempted to be heard — and on all three occasions the court cut her off.