


FILED

Jun 02 2026, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE

# Court of Appeals of Indiana

Christian Q. White,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 2, 2026

Court of Appeals Case No.
25A-CR-959

Appeal from the Clark Circuit Court

The Honorable Nicholas A. Karaffa, Judge

Trial Court Cause No.
10C01-2101-MR-1

---

**Opinion by Judge Altice**
Judge Brown concurs.
Judge DeBoer dissents with separate opinion.

**Altice, Judge.**

## Case Summary

Christian Q. White appeals his convictions for murder, a felony, and unlawful possession of a firearm by a serious violent felon (SVF), a Level 4 felony, claiming that the trial court erred in denying his motion to dismiss after a mistrial was granted during his first trial because the State's decision to retry him twice more violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. White further argues that the trial court abused its discretion in sentencing him because it did not identify any mitigating factors, and that his seventy-year aggregate sentence is inappropriate when considering the nature of the offenses and his character. White additionally claims that the trial court's enhancement of the murder sentence based on the same firearm that formed the charge for possession of a firearm by a SVF violates double jeopardy prohibitions and that the trial court improperly ordered the ten-year enhanced sentence for his use of a firearm to run consecutive to the murder sentence.

We affirm.

## Facts and Procedural History

Marcus Suggs and his wife, Diane (collectively, the Suggses), were living in a Jeffersonville apartment in 2020. Diane suffers from a condition that makes her unable to walk or use her hands. White is Marcus's cousin and he and his girlfriend moved in with the Suggses sometime in December 2020. On the evening of December 30, 2020, when the Suggses were in their bedroom, White

walked in, pointed a gun at Marcus, and ordered him to the living room. Marcus complied and at some point, White shot Marcus in the chest, killing him. White immediately fled the scene and was apprehended several days later in Kentucky following an interstate manhunt by police. While incarcerated in the Louisville jail, White admitted to shooting Marcus, but he claimed that it was accidental.

[4] The State charged White with murder, possession of a firearm by a SVF, a Level 4 felony, and pointing a firearm, a Level 6 felony. It subsequently amended the charging information, alleging that White was eligible for an enhanced charge because he used a firearm during the commission of the murder.

[5] White's first jury trial commenced on May 14, 2024. On the fourth day of trial, White's counsel learned that the State had failed to produce numerous documents during discovery, including a report from a medical examiner that the State intended to call as a trial witness. When the parties went on the record to discuss how to proceed in light of the State's noncompliance with discovery, White made an oral motion for a mistrial. In response, the State acknowledged that it had not turned over several documents White was "entitled to" but argued "the appropriate recourse . . . [was] to grant a continuance[.]" *Transcript Vol.* 4 at 70. The trial court continued the trial and scheduled it to resume on May 28.

On May 20, 2024, the trial court advised the parties that it had released one juror because of his unavailability during the week that the trial was to resume. On May 22, White moved to dismiss the charges because of the State's failure to disclose discovery. The trial court denied the motion and the trial was continued to June 4.

On May 30, the trial court notified the parties that it had excused another juror due to her unavailability the week of June 4 and advised the parties at a meeting in chambers that another juror may not be available during the week of June 10. The following day, the trial court issued the following order:

> [T]he Court[] . . . hereby declares a mistrial due to an insufficient number of jurors who can continue to serve. Both alternates have been excused and now an additional juror is unable to serve. Therefore, a mistrial is declared. Mr. White's trial shall begin on June 24, 2024 at 9:00 a.m.

*Appellant's Appendix Vol.* 4 at 56.

After the mistrial was declared, White filed a motion to dismiss the charges based on double jeopardy concerns. White claimed that dismissal with prejudice was warranted because "[n]o hearing with the parties was held prior to the entry of the Order declaring the mistrial" and "[t]he Court failed to consider alternatives[.]" *Id.* at 66.

The State opposed White's motion to dismiss and filed the following:

> 49. At [the] meeting in chambers between the Court, the [State], and defense counsel on May 30[] . . . , the State indicated its case-in-

chief was expected to go into the following week of June 10[] . . .
.

> 50. The Court advised the parties that jurors had been contacting the Court about their availability, or lack thereof, for the continued trial date. Specifically, it was determined that there were two jurors who might potentially need to be excused, and if that was the case, then we would only have [eleven] jurors to proceed to the continued trial.

> 51. *In that conversation, the Court brought up the need for a mistrial if those [two] jurors were excused leaving only [eleven] jurors at play. Upon hearing this, defense counsel took no action.*

*Id.* at 120 (emphasis added).

[10] The State argued, among other things, that the three jurors' unavailability created a manifest necessity for declaring a mistrial, and that the failure of White's counsel to object, offer alternatives during the in-chambers meeting, ask for additional time to confer with his client, or request an on-the-record hearing precluded White from moving to dismiss the charges on double jeopardy grounds. At a hearing on the motion to dismiss, the State reiterated that it believed the parties discussed the possibility of a mistrial on May 30.

[11] Following the hearing, the trial court denied White's motion to dismiss. In its order, the trial court noted that it met with counsel in chambers on May 30 "to discuss losing jurors due to the delay in trial" and that "[n]o objections were made." *Id.* at 163. The trial court explained that after it dismissed the third juror on May 31, it "found there were no reasonable alternatives other than

declaring a mistrial[,]" in part because it was "not . . . agreeable to continuing with eleven . . . jurors . . . ." *Id.* at 164.  Thus, the court ruled there had been "a manifest necessity to declare a mistrial due to the lack of jurors" and a "subsequent prosecution [was] not barred by double jeopardy." *Id.* at 163-64.

[12]  Following White's second jury trial that commenced on June 24, 2024, White was found guilty of possessing a firearm and acquitted of pointing a firearm.  However, it could not reach a unanimous verdict on the murder charge.  White stipulated that he was a SVF and waived his right to a jury trial on that allegation.  The trial court then entered a judgment of conviction for unlawful possession of a firearm as a SVF and declared a mistrial on the murder charge.

[13]   The State chose to try White for murder a third time, and that jury trial commenced on February 18, 2025.  On February 24, White was found guilty of murder and using a firearm during the commission of that offense.  The trial court entered judgments of conviction on both offenses and at a subsequent sentencing hearing, White maintained his innocence and presented no mitigating factors.  The trial court identified White's juvenile and adult criminal histories, his probation and parole violations, and community corrections violations as aggravating factors and found no mitigating circumstances.  The trial court sentenced White to sixty years for murder and to six years on the possession of a firearm as a SVF charge that was ordered to run concurrent with the sentence imposed for murder.  The trial court also enhanced the murder

charge by ten years because White used a firearm in committing the murder, thus resulting in a seventy-year aggregate sentence.

[14] White now appeals.

## Discussion and Decision

## I. Mistrial and Double Jeopardy Concerns

[15] White contends that the trial court erred in denying his motion to dismiss on procedural double jeopardy grounds. As double jeopardy presents a question of law, we review his claim de novo. *Maxwell v. State*, 273 N.E.3d 140, 146 (Ind. Ct. App. 2025), *trans. denied.* But because the double jeopardy issue here turns on the trial court's earlier mistrial ruling, we review the fact-specific considerations underlying that ruling for an abuse of discretion. *See Garnes v. State*, 231 N.E.3d 239, 242 (Ind. Ct. App. 2024) (citing *Brock v. State*, 955 N.E.2d 195, 207 (Ind. 2011)), *trans. denied.*

[16] With regard to the grant of a mistrial and double jeopardy concerns, our Supreme Court has stated:

> If the trial judge declares a mistrial over the defendant's objection, the defendant may be retried only if the government demonstrates that the mistrial was justified by a "manifest necessity" or that "the ends of public justice would otherwise be defeated." *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580[] . . . (1824) . . . . But if the defendant consents to the mistrial, then retrial is permitted as a matter of course, unless the defendant can prove that the government intentionally goaded him or her into consenting to the mistrial "to subvert the protections afforded by the Double Jeopardy Clause." [*Oregon v. Kennedy*, 456 U.S. 667,

676 (1982)] . . . . Thus, determining whether the State was permitted to retry [a defendant] after his first trial ended in a mistrial involves a multi-step analysis. *We first consider whether he consented to the trial judge's declaration of a mistrial. If so, then we consider whether the government goaded him into consenting. If he did not consent to the mistrial, then we consider whether it was justified by a "manifest necessity."*

*Brock,* 955 N.E.2d at 200 (emphasis added).

[17] Here, White maintains that there was no manifest necessity for the trial court to declare a mistrial because Indiana Jury Rule 16 "allowed the trial court to continue with less than twelve . . . jurors, and [it] did not explore that option." *Appellant's Brief* at 6. The State asserts—and we agree—that White consented to the mistrial by failing to object.

[18] Consent to a mistrial may be express or implied. *See Brock,* 955 N.E.2d at 201. A defendant expressly consents to a mistrial by "successfully request[ing] termination of the proceedings on grounds unrelated to guilt or innocence" or "by expressly agreeing to be tried again." *Id.* at 200. On the other hand, a defendant may impliedly consent if "he or she has an opportunity to object and fails to do so." *Id.* at 202. A defendant will be found to have tacitly consented if it is evident from the record that the defense was put on notice or should have reasonably anticipated that a mistrial was possible and took no action to prevent it. *See id.*

[19] Here, the State concedes that White did not expressly consent to the mistrial and argues instead that he "tacitly consented." *Appellee's Brief* at 15. The trial court's order denying White's motion to dismiss stated that it "met with the parties . . . to discuss losing jurors due to the delay in trial." *Appellant's Appendix Vol. IV* at 163. The State likewise asserted in its response to White's motion that, during the May 30, 2024 meeting, the trial court "brought up the need for a mistrial" if two jurors were excused, leaving only eleven jurors. *Id.* at 120.

[20] White had an opportunity to object to a mistrial based on an insufficient number of jurors, ask the court to proceed with fewer than twelve jurors, or propose alternatives. He did none of those things at the hearing, and the trial court specifically noted that "[n]o objections were made." *Id.* at 163.

[21] In accordance with *Brock,* a defendant's failure to object to a mistrial will be deemed as consent if the trial court afforded some opportunity for the defendant to raise such an objection. 955 N.E.2d at 203. Indeed, this is not a case where "the trial judge acted abruptly in declaring [a] mistrial [where] there was *no* opportunity to object . . . *or without allowing any response*, . . . or "[having] no clue that the trial judge would declare a mistrial." *Id.* at 202-04 (citing *U.S. v. Jorn*, 400 U.S. 470, 487 (1971)) (emphasis added).

[22] The circumstances here support a determination that White tacitly consented to the declaration of a mistrial. He therefore is precluded from challenging that

declaration on appeal, and we conclude that a retrial was not barred by double jeopardy prohibitions. [1]

## II.  Sentencing

## A.  Abuse of Discretion

[23]     White claims that the trial court abused its discretion in sentencing him because it did not identify any mitigating factors.  Specifically, White maintains that the trial court should have found that the assistance he rendered to Diane was a mitigating circumstance.

[24]     We review a trial court's sentencing decisions for an abuse of discretion.  *Owen v. State*, 210 N.E.3d 256, 269 (Ind. 2023).  A trial court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."  *Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)).  A trial court may abuse its sentencing discretion in a number of ways, including if it (1) fails to enter a sentencing statement; (2) relies on aggravators or mitigators unsupported by the record; (3) fails to find aggravators or mitigators that are supported by the record and advanced for consideration; or (4) relies on reasons

---

[1] Inasmuch as we have concluded that White tacitly or impliedly consented to the declaration of a mistrial, we need not explore whether the State demonstrated that a mistrial was justified by a "manifest necessity."  *See Brock,* 955 N.E.2d at 200.

that are improper as a matter of law. *Cardwell v. State*, 895 N.E.2d 1219, 1223 (Ind. 2008). The trial court is not required to find the presence of mitigating circumstances. *Anglemyer*, 868 N.E.2d at 491.

[25] White's sole contention is that the trial court erred in failing to find that the alleged assistance he rendered to Diane was a mitigating factor. White has waived this issue, as he did not advance this argument at sentencing. *See, e.g., Georgopulos v. State*, 735 N.E.2d 1138, 1145 (Ind. 2000) (stating that if the defendant does not offer a factor to be mitigating at sentencing, it is presumed that the factor is not significant and the defendant is precluded from advancing it on appeal).

[26] Waiver notwithstanding, the trial court would not have abused its discretion in rejecting this mitigating factor had White proposed it at sentencing. A trial court only errs in failing to find a mitigating factor if the defendant can show it is both significant and clearly supported by the record. *Matshazi v. State*, 804 N.E.2d 1232, 1240 (Ind. Ct. App. 2004), *trans. denied*.

[27] Here, the evidence shows that White had been staying with the Sugges for only a few days before he murdered Marcus. To the extent that White might have provided any assistance to Diane, it would only have been for a short time. Moreover, the evidence demonstrated that after White murdered Marcus, he fled the scene and left Diane alone in the apartment with her husband's dead body and no assistance. In short, White has failed to establish that his alleged care for Diane was significant or clearly supported by the record. For these

reasons, we conclude that the trial court did not abuse its discretion in not identifying White's purported assistance to Diane as a mitigating circumstance.

## B. Inappropriate Sentence

[28] White argues that his sentence is inappropriate when considering the nature of his offenses and his character. White claims that his sentence is inappropriate because the evidence established that he acted to "stop an assault on his companion and his character was reflected in that he was a caregiver for a disabled woman." *Appellant's Brief* at 10.

[29] Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The "advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017), *trans. denied*. And our Supreme Court has explained that

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.), as amended (July 10, 2007), decision clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[30] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *Hambel v. State*, 119 N.E.3d 1142, 1151 (Ind. Ct. App. 2019), *trans. denied*. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[31] Here, White was sentenced to sixty years for murder. The sentencing range for that offense is between forty-five and sixty-five years with an advisory sentence of fifty-five years. Ind. Code § 35-50-2-3. White was also convicted of possession of a firearm by a SVF, a Level 4 felony, and sentenced to a concurrent term of six years. The sentencing range for that offense is between two and twelve years with an advisory sentence of six years. I.C. § 35-50-2-5.5. The trial court then enhanced White's sentence for murder by ten years because he used a firearm during the commission of the murder. The sentencing range for that enhancement is between five and twenty years. I.C. § 35-50-2-11. The

trial court imposed an aggregate sentence of seventy years, which is far below what the court could have imposed.

[32]     When examining the nature of White's offenses, the evidence demonstrated that absent any provocation, White shot and killed Marcus.[2] This was an egregious and senseless act and immediately after the shooting, White fled the apartment and left Diane—who is totally immobile—alone in the apartment with Marcus's dead body. Law enforcement engaged in a multi-state manhunt for White until he was apprehended in Kentucky days after the murder. White has failed to establish that his sentence is inappropriate when considering the nature of the offense.

[33]     Turning to White's character, the record shows that White's juvenile history includes adjudications for numerous offenses including assault and aggravated menacing. As an adult, White was convicted of felonious assault and aggravated burglary with a firearm. He was on parole for the assault conviction when he murdered Marcus. These prior offenses and adjudications reflect poorly on White's character. *See, e.g., Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (the number of prior offenses in relation to the current offense is significant in assessing the defendant's character). Additionally, when White was sentenced for the instant offenses, he had pending charges in

---

[2] White provided several inconsistent and conflicting explanations about the shooting. On the one hand, White stated that the shooting happened when he discovered that Marcus was attempting to rape Flores, his girlfriend, in the apartment. White then changed his story and alleged that Flores was the shooter and he lied to protect her. White then admitted while he was incarcerated that he accidentally shot Marcus.

Kentucky for two counts of kidnapping, convicted felon in possession of a handgun, and fleeing law enforcement. White also had an active warrant in Ohio for a parole violation.

[34] Receiving lesser sentences for other offenses has not imparted on White the need or desire to change his criminal behavior as he continued to engage in dangerous criminal activity and violate parole and probation. White's repeated and consistent disregard for the law does not portray his character in "a positive light." *See Stephenson,* 29 N.E.3d at 122.

[35] Finally, while White contends that his sentence is inappropriate because he provided care for Diane and, therefore, possessed a positive character trait, the record shows that whatever assistance he might have provided to her was minimal at best because he had only been staying with the Suggses for a few days before he killed Marcus. Moreover, whatever care that White may have provided is negated by the fact that White fled the scene immediately after the shooting and left Diane alone.

[36] Based on the serious nature of White's offenses, his juvenile and adult criminal history, his continued commission of serious crimes, and the violation of parole and probation, we cannot say that White has produced compelling evidence demonstrating that the nature of his offense or his character renders his sentence inappropriate. We therefore affirm White's sentence.

## C. Double Jeopardy and Sentence Enhancement

[37] White argues that his conviction for unlawful possession of a firearm by a SVF and the sentencing enhancement for his use of a firearm violate double jeopardy prohibitions. White contends that the firearm possession conviction must be set aside because "the same evidence was used to prove both the possession and the use [of the firearm]." *Appellant's Brief* at 11.

[38] Notwithstanding White's contention, our Supreme Court has distinguished between the possession of a firearm and using it, holding that those two acts are legally separate even when performed with the same weapon. *See Nicoson v. State*, 938 N.E.2d 660, 665 (Ind. 2010). In *Nicoson*, it was determined that imposing an additional five-year fixed term under I.C. § 35-50-2-11 for the actual use of a firearm in addition to a conviction for criminal confinement elevated to a Class B felony because the defendant was "armed with a deadly weapon," did not violate double jeopardy. *Id.; see also Cooper v. State*, 940 N.E.2d 1210, 1215 (Ind. Ct. App. 2011) (recognizing that a firearm enhancement is a cumulative punishment rather than a separate offense and sentencing enhancements do not implicate double jeopardy concerns), *trans. denied.* And more recently, our Supreme Court has declared that "an enhanced punishment, whether based on attendant circumstances or on a prior conviction presents no double jeopardy issue at all." *Wadle v. State,* 151 N.E.3d 227, 254 (Ind. 2020). For these reasons, we reject White's claim that enhancing his murder sentence for the use of a firearm ran afoul of double jeopardy prohibitions.

## D. Consecutive Sentence

[39] White argues that the trial court erred in imposing a consecutive sentence "for the ten years added to the sentence for murder." *Appellant's Brief* at 14. White maintains that he must be resentenced because a "sentencing enhancement [is] cumulative punishment rather than a penalty for a separate offense." *Id.*

[40] Trial courts have broad discretion in formulating sentences. *Jackson v. State*, 105 N.E.3d 1081, 1084 (Ind. 2018). A trial court's sentence within the statutory range is reviewed for an abuse of discretion. *Anglemyer*, 868 N.E.2d at 490. A trial court abuses its discretion when it imposes a sentence that is not permitted by law. *Reed v. State*, 856 N.E.2d 1189, 1199 (Ind. 2006).

[41] Ind. Code § 35-50-2-11 authorizes a firearm sentence enhancement when the State proves beyond a reasonable doubt that a defendant knowingly or intentionally used a firearm in the commission of certain enumerated offenses. Murder qualifies as an enumerated offense under I.C. § 35-50-2-11(b)(1) because it is "a felony . . . that resulted in death or serious bodily injury." Upon such a finding by the factfinder, "the court may sentence the person to an additional fixed term of imprisonment of between five (5) years and twenty (20) years." *Id.*

[42] This court has determined that "an enhancement for use of a firearm under [I.C.] § 35-50-2-11 *must be served consecutively*." *Hall v. State,* 231 N.E.3d 868, 876 (Ind. Ct. App. 2024) (emphasis added), *trans. denied.* And in *Lumbley v. State,* 74 N.E.3d 234, 240 (Ind. Ct. App. 2017), *trans. denied,* it was reasoned

that firearm enhancements may be ordered to run consecutively to an underlying felony because "enhancements do not have the special and distinct dimensions of habitual offender enhancements and are similar to the finding of aggravating circumstances for separate offenses." To be sure, because habitual-offender enhancements do not naturally relate to any particular offense, trial courts must specify to which underlying felony sentence the enhancement applies. *Jackson,* 105 N.E.3d at 1086. I.C. § 35-50-2-8(j) states that a habitual offender "is a status that results is an enhanced sentence. It is not a separate crime and does not result in a consecutive sentence." And this same statute requires the trial court to "attach the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced." *Id.* Our research has revealed no other Indiana sentencing enhancement statute that contains similar requirements. For these reasons, we conclude that the trial court did not abuse its discretion in ordering the firearm enhancement to run consecutively to White's murder sentence.

## Conclusion

[43] In light of our discussion above, we conclude that the trial court properly denied White's motion to dismiss because he impliedly consented to the declaration of a mistrial. Thus, White failed to show that a retrial violated double jeopardy prohibitions. We also hold that the trial court did not abuse its discretion in sentencing White and conclude that White has failed to show that his sentence is inappropriate. We further conclude that enhancing White's sentence for murder because he used a firearm during the commission of the

offense did not violate double jeopardy prohibitions. Finally, the trial court properly ordered the sentence imposed for White's use of a firearm during the commission of the murder to run consecutive to the murder sentence.

[44] Judgment affirmed.

Brown, J., concurs.

DeBoer, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT

Christopher Sturgeon
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Megan M. Smith
Assistant Section Chief
Indianapolis, Indiana

**DeBoer, Judge, dissenting.**

The State's decision to try White twice more after his first jury trial ended in a mistrial violated the Double Jeopardy Clause of the Fifth Amendment. I therefore respectfully dissent, as I would reverse his convictions for murder and unlawful possession of a firearm by a serious violent felon.

The Fifth Amendment's Double Jeopardy clause, applicable to the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 795 (1969), provides that "[n]o person shall . . . be subject for the same offen[s]e to be twice put in jeopardy of life or limb[,]" U.S. CONST. amend. V. This embodies a "defendant's 'valued right to have his trial completed by a particular tribunal,'" which includes an entitlement "to have his trial completed by the first jury impaneled to try him[.]" *Brock v. State*, 955 N.E.2d 195, 199 (Ind. 2011) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949), *reh'g denied*), *cert. denied*. That right is not absolute, however, and "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Id.* at 200 (quoting *Wade*, 336 U.S. at 689). One component of a fair trial is "the right of all parties to have a criminal case decided by a jury of twelve[,]" which "is shared by the government and the defense." *United States v. Garske*, 939 F.3d 321, 327, 336 (1st Cir. 2019), *cert. denied*; *see also Croney v. State*, 710 N.E.2d 212, 213 (Ind. Ct. App. 1999) ("The right to a twelve-member jury is a purely statutory matter of trial procedure . . . ."), *trans. denied*.

[47] White's double jeopardy claim raises a question Indiana has yet to address: how does a court balance a defendant's constitutional right against double jeopardy with the procedural right of all parties to have serious criminal cases tried by a twelve-member jury? According to White, the trial court's decision to declare a mistrial barred reprosecution because the court did not adequately explore—if at all—proceeding with fewer than twelve jurors under Indiana Jury Rule 16. The State disagrees and argues "White tacitly consented to the mistrial by not objecting" and, in any event, "[t]he trial court did not want to proceed with less than [twelve] jurors and the Indiana Jury Rules require the trial court's consent to do so." Appellee's Brief at 12-13.

[48] To unpack these competing assertions and explain why I diverge from the majority on this issue, I proceed in three parts. First, I outline the trial court's failure to make a contemporaneous record of the mistrial declaration. Second, I conclude that the resulting gaps in the record leave us with no clear indication that White impliedly consented to the mistrial. Lastly, I determine the trial court's finding of manifest necessity cannot stand because it did not give White the opportunity to propose alternatives before discharging the jury.

## 1. The trial court made no contemporaneous record of the mistrial declaration.

[49] The majority presents the circumstances leading to the mistrial declaration as if they are clear and undisputed. On the contrary, the first mention in the record of the specifics of what led to the mistrial is the account given by White's counsel in his motion to dismiss. According to that motion, shortly after the

trial court continued the trial to May 28, it released one of the jurors who was not available to return that week.[3]  The court apparently informed the parties of that first juror's release on May 20, though there was no mention of it at the status hearings held on the 22nd and 24th, nor was it noted on the Chronological Case Summary.  White's counsel further claimed that on May 29, he called the deputy prosecutor "to discuss the potential of [other] jurors being unavailable" to return to court on June 4 when the trial was set to resume.  Appellant's Appendix Vol. 4 at 62.  Then,

> [t]he following morning, [White's counsel] and [two deputy prosecutors] met with the Court in chambers in an off the record meeting regarding juror availability.  . . . During the in chambers meeting, the Court advised the [parties] that a second juror had been *sua sponte* released due to her unavailability during the week of June 4, 2024.[4]  The Court further advised that a third juror may not be available the week of June 10, 2024.  The Court advised the parties it would let them know of the third juror's availability after confirming whether she was available.  On May 31 . . . , the Court entered an Order declaring a mistrial . . . .

*Id.* at 62-63.

[50]  The first time any party mentioned that the trial judge discussed the possibility of a mistrial was in the State's opposition to White's motion to dismiss, where it claimed,

---

[3] This left twelve jurors and one alternate.

[4] This left a twelve-member jury with no alternate jurors.

> At [the] meeting in chambers between the Court, the [State], and defense counsel on May 30, . . . the Court brought up the need for a mistrial if those [two] jurors were excused leaving only [eleven] jurors at play. Upon hearing this, defense counsel took no action.

*Id.* at 120. The majority presents the State's version of events as fact but provides no explanation for why it's doing so. After it became clear the parties disputed whether the possibility of a mistrial was discussed, the trial court knew that White's double jeopardy claim hinged on its resolution of a disputed issue of fact. Critically, the court's order denying White's motion is silent on that issue. All the trial judge recounted about the in-chambers meeting was the following:

> On May 30, 2024, the Court met with the parties in chambers to discuss losing jurors due to the delay in trial. No objections were made.

*Id.* at 163. But, as I next explain, while failing to object when the trial judge expressly mentions a *mistrial* might be implied consent—failing to object to "losing jurors" isn't, without more.

## 2. It's not evident from the record that White impliedly consented to the mistrial.

[51] The threshold inquiry for any Fifth Amendment double jeopardy claim is whether the defendant consented to the mistrial declaration. *United States v. Toribio-Lugo*, 376 F.3d 33, 40 (1st Cir. 2004) ("[D]ouble jeopardy principles require that a defendant retain primary control over whether or not to abort an

ongoing trial." (citing *United States v. Dinitz*, 424 U.S. 600, 609 (1976))).

Consent to a mistrial may be express or implied. *Id.* A defendant expressly consents to a mistrial by "successfully request[ing] termination of the proceedings on grounds unrelated to guilt or innocence" or "by expressly agreeing to be tried again." *Brock*, 955 N.E.2d at 200. A defendant may impliedly consent if "he or she has an opportunity to object and fails to do so." *Id.* at 202.

[52] But as the Seventh Circuit has expressed, an appellate court "will not search for consent where it is not affirmatively given and clearly evident on the record." *Lovinger v. Cir. Ct. of the 19th Jud. Cir., Lake Cnty.*, 845 F.2d 739, 744 (7th Cir. 1988), *cert. denied*. As a corollary, a defendant cannot be found to have tacitly consented unless it's evident from the record that the defense was put on notice or should have reasonably expected that a mistrial was possible and took no action to prevent it.[5] *See Brock*, 955 N.E.2d at 202 ("[I]n some cases there is no opportunity to object and to prohibit a defendant from raising a double-jeopardy claim under such circumstances would be too harsh."); *see also Toribio-*

---

[5] To help illustrate when a defendant has a duty to reasonably anticipate a mistrial declaration, our Supreme Court found "helpful" the following explanation provided by Seventh Circuit Judge Easterbrook:

> Parties may give assent in many ways. If a judge should say: "I think a mistrial would be a good idea, but think this over and let me know if you disagree," the defendant's silence would be assent. The principal functions of the double jeopardy clause are to allow a defendant to get a verdict at the first trial if he wants one and to keep a verdict that is favorable. Whether the defendant wants a verdict is something he knows best, and when the occasion for choice comes he must choose unless . . . the judge brooks no opposition, or unless there is insufficient time to deliberate.

*Brock*, 955 N.E.2d at 202 (quoting *United States v. Buljubasic*, 808 F.2d 1260, 1265-66 (7th Cir. 1987), *reh'g en banc denied, cert. denied*).

*Lugo*, 376 F.3d at 40 ("[T]he implication of consent is not lightly to be indulged.").

[53]     While I admit it's a close call, I respectfully disagree with the majority that White tacitly consented to the mistrial. To begin, the trial court's decision to hold the May 30 meeting off the record without contemporaneously memorializing what it discussed with the parties significantly hinders review of whether White should have reasonably anticipated the mistrial declaration. As this Court has long held, off-the-record discussions or hearings are "of no use to us unless made a part of the record." *Ind. & Mich. Elec. Co. v. Pounds*, 428 N.E.2d 108, 109 (Ind. Ct. App. 1981) (denying petition for rehearing despite appellees' contention that "a great deal occurred at [an off-the-record] pre-trial conference which would have clarified the manner in which [the] case proceeded to trial"), *denying reh'g*. With no record of the May 30 meeting, we are left only to try to recreate what was said by reviewing the competing accounts given by White and the State in litigating the motion to dismiss.

[54]     Again, I hesitate to join the majority in accepting the State's version of events because, as White correctly notes, "[t]he trial court made no finding or other statement of a potential declaration of a mistrial due to insufficient jurors." Appellant's Reply Br. at 5. If the record were clear about what occurred during the in-chambers meeting, I might have joined the majority. But the record supports two competing accounts: White maintained below and on appeal that the possibility of a mistrial was never mentioned, while the State contends that it was. The trial judge was best positioned to resolve that factual dispute, yet it

did not do so. As a result, I cannot say with confidence that "the possibility of mistrial [was] raised" in chambers—an event that would have required White "to indicate 'whether [he] want[ed] a verdict.'" *Escobar v. O'Leary*, 943 F.2d 711, 716 (7th Cir. 1991) (quoting *United States v. Buljubasic*, 808 F.2d 1260, 1266 (7th Cir. 1987), *reh'g en banc denied*, *cert. denied*).

[55] I again acknowledge that this is a close call, as the court's finding that neither party objected to dismissing the third juror is ambiguous and open to interpretation. It could be, as the State claims, that the court said it might declare a mistrial if it dismissed the third juror, and *that* is what garnered no objection. But another reasonable interpretation of the court's order is that it simply told the parties it may need to dismiss another juror without discussing how to proceed if it did so, and neither party objected to reducing the jury to eleven members. In the former circumstance, White's silence would likely be enough to constitute assent to a mistrial under Judge Easterbrook's analysis in *Buljubasic*. But in the latter, the mere fact that only eleven jurors remained would not, in and of itself, require that the trial be terminated. *See* Ind. Jury Rule 16 (permitting the parties and the court to agree to proceed with less than twelve jurors).

[56] Keeping in mind that we should not find consent where it is not "clearly evident on the record[,]" *Lovinger*, 845 F.2d at 744, I can only conclude the trial judge hastily declared a mistrial after releasing the third juror without giving White an opportunity to object or propose alternatives. And it did so without following our Supreme Court's instruction to "allow time for such an objection

prior to discharging the jury" to "give [itself] an opportunity to rethink its position and correct any error . . . ." *Brock*, 955 N.E.2d at 203. In such a case, "a failure to object will not be deemed to be consent unless the totality of the circumstances otherwise shows that the defendant consented to the mistrial." *Id.*

[57] Here, the totality of the circumstances shows that White did not expressly consent to a mistrial, and he would not have done so if given the opportunity. On May 24—just seven days before the court declared a mistrial—White's counsel told the court during a status hearing on the State's late discovery that his client thought the trial was "going well[.]" Transcript Vol. 4 at 100. Accordingly, despite the State's discovery violations (which defense counsel believed was grounds for a mistrial), White "wanted to go forward with his trial . . . ." *Id.* Nothing in the record suggests that White would have changed his position simply because only eleven jurors remained available to finish the trial. And White moved to dismiss on the first business day after the mistrial declaration—a quickness of action which hardly suggests the defense would have sat idly by if it knew the court was considering a mistrial.

## 3. The trial court's manifest necessity finding cannot stand because it gave White no opportunity to propose alternatives to a mistrial.

[58] Since White did not consent to the mistrial, the trial court's decision to declare one "act[ed] as an acquittal and bar[red] reprosecution for the same offense[s][,]" unless the court was compelled to do so by manifest necessity.

*Brock*, 955 N.E.2d at 206. Manifest necessity is a somewhat nebulous concept, and there is no "standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Id.* (quoting *Arizona v. Washington*, 434 U.S. 497, 506 (1978)).[6] Instead, our Supreme Court has outlined "various considerations that factor into our review." *Id.* at 207.

[59] One such consideration is "whether the reason for the mistrial is attributable to the prosecution." *Jackson v. State*, 925 N.E.2d 369, 373 (Ind. 2010), *reh'g denied*. If it is, "the State must demonstrate a 'much higher' degree of necessity for the mistrial." *Id.* (quoting *Brown v. State*, 703 N.E.2d 1010, 1016 (Ind. 1998)). As aptly summarized by the First Circuit,

> the particular facts of a case may affect the deference with which an appellate court views a trial court's judgment to order a mistrial: at one end of the continuum lie cases in which a mistrial is accompanied by a valence of prosecutorial abuse such that the manifest-necessity determination should be viewed with less deference; at the other end of the continuum lie cases in which the possibility of prosecutorial abuse seems far-fetched (the paradigmatic example of which is a hung jury) and, therefore, the fact-specific nature of the trial court's determination should engender great deference.

*United States v. Dennison*, 73 F.4th 70, 76 (1st Cir. 2023) (citing *Washington*, 434 U.S. at 508-10). But regardless of where a case falls on that continuum, "we

---

[6] The First Circuit has commented, for example, that "[a]ttempts to define the term more precisely—beyond tautological acknowledgments that manifest necessity demands a 'high degree' of necessity—have not been helpful." *Toribio-Lugo*, 376 F.3d at 39 (quoting *Washington*, 434 U.S. at 506) (internal citation omitted).

[will] examine the necessity of the mistrial in light of the steps taken by the trial court to avoid a mistrial, including whether counsel had an opportunity to be heard, whether the trial court considered alternatives, and whether the trial court's decision came after adequate reflection."[7] *Brock*, 955 N.E.2d at 207.

[60]   Here, White does not argue that the mistrial declaration should be attributed to the State. In fact, he asserts the trial judge "act[ed] unilaterally" in dismissing jurors and had *himself* "created the situation" that led to the mistrial. Appellant's Br. at 9. Thus, I do not review the court's decision with the "strictest scrutiny [that] is appropriate . . . when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Washington*, 434 U.S. at 508. That said, the State was not *blameless* in causing the mistrial, either, as a full twelve-member jury would have presumably been available to finish the trial had it not been continued due to the State's discovery violations. This case therefore lies somewhere on the continuum between strict scrutiny and great deference, so while I'm deferential to the trial court's finding of manifest necessity, I won't "provide a rubber stamp for [its] discretionary determination[]." *Dennison*, 73 F.4th at 78. The primary consideration is whether the court's "decision reflected 'a scrupulous exercise of judicial discretion,' . . . and was justified by a

---

[7] We generally "also consider the burden imposed by the mistrial and, as a general matter, the values protected by the Double Jeopardy Clause 'are not as great when the trial is terminated shortly after jeopardy has attached as opposed to at a later stage in the trial.'" *Brock*, 955 N.E.2d at 207 (quoting *Jackson*, 925 N.E.2d at 374). However, neither party here discussed this consideration in their briefs, so I don't address it either.

'high degree' of necessity[.]" *Id.* (first quoting *United States v. Jorn*, 400 U.S. 470, 485 (1971); and then quoting *Washington*, 434 U.S. at 506).

[61] In denying White's motion to dismiss, the trial court found there was a manifest necessity to declare a mistrial "due to the lack of jurors" and because it was "not . . . agreeable to continuing with eleven . . . ." Appellant's App. Vol. 4 at 163-64. The State argues the court's reasoning is supported by Indiana Jury Rule 16, which provides that a "jury shall consist of twelve . . . persons, unless the parties and the court agree to a lesser number of jurors." J.R. 16(a). According to the State, since "the trial court did not agree to proceeding with less than [twelve] jurors[,] . . . there was a high degree of necessity to declare a mistrial . . . ." Appellee's Br. at 17. But White counters that the trial court's finding of manifest necessity cannot stand because it did not "adequately explore[]" the option of proceeding with less than twelve jurors and did not give White an opportunity to propose that (or any other) alternative. Appellant's Reply Br. at 7 (quoting *Toribio-Lugo*, 376 F.3d at 39). Because nothing in the record suggests the trial judge considered proceeding with fewer than twelve jurors before declaring a mistrial, I agree with White.[8]

[62] No Indiana appellate court has yet had an occasion to interpret Jury Rule 16, so I look to federal authorities for guidance given the similarities between it and

---

[8] The majority claims "White had an opportunity to object to a mistrial . . . , ask the court to proceed with fewer than twelve jurors, or propose alternatives . . . at the *hearing*[.]" *Ante* (emphasis added). It's unclear what hearing the majority is referring to, but it's presumably referring to the informal, off-record-in-chambers meeting for which we have no clear idea of what was discussed. *See supra* Section 1.

Federal Rule of Criminal Procedure 23.[9] *See Cleveland Range, LLC v. Lincoln Ft. Wayne Assoc., LLC*, 43 N.E.3d 622, 624 n.1 (Ind. Ct. App. 2015) ("Where a state trial rule is patterned after a federal rule, we will often look to the authorities on the federal rule for aid in construing the state rule."), *trans. denied*. And at least one federal circuit court has held that judges must give defendants the opportunity to propose proceeding with fewer than twelve jurors under that rule before discharging the jury sua sponte. *Toribio-Lugo*, 376 F.3d at 39.

[63] There, the defendant was put on trial for federal narcotics offenses. *Id.* at 36. At the start of the trial's fourth day, the court discovered one of the jurors had "vanished" on day one without the parties or the court noticing, and he had been absent for essentially the entire trial. *Id.* at 37. Consequently, "only twelve jurors had begun to hear evidence in the case and [after another juror was dismissed,] only eleven of them had been present from the second day forward." *Id.* Immediately upon learning that information, and without giving defense counsel time to express her opinion on how to proceed, the judge "announced that he was going to declare a mistrial because only eleven jurors had heard the evidence and he did not believe that there was any way to cure that defect." *Id.* at 36. The defendant's attorney tried to speak several times after the court made that announcement, only for the judge to interrupt her each time before "reconven[ing] the jury and, acting sua sponte, declar[ing] a

---

[9] Federal Rule of Criminal Procedure 23 provides, in pertinent part, that "[a]t any time before the verdict, the parties may, with the court's approval, stipulate in writing that . . . the jury may consist of fewer than [twelve] persons . . . ." Fed. R. Crim. P. 23(b)(2)(A).

mistrial." *Id.* at 37. Afterward, the defense moved to dismiss the indictment on double jeopardy grounds, and the district court denied that motion in part because it "concluded that a mistrial was required by manifest necessity because only eleven jurors remained . . . ." *Id.* The First Circuit reversed, reasoning,

> [T]here was a clear alternative to a mistrial: proceeding with eleven jurors. Although the Criminal Rules normally require a twelve-member jury in a criminal case, *see* Fed. R. Crim. P. 23(b)(1), the parties may by agreement proceed with fewer than twelve, *see* Fed. R. Crim. P. 23(b)(2)(A). Thus, it was within the power of the district court to continue with eleven jurors as long as the parties consented to doing so.
>
> . . . .
>
> . . . The court never offered the [defendant] a choice between proceeding with eleven jurors or accepting a mistrial. To cinch matters, the court, during the pertinent time frame, made no effort to ascertain the [defendant's] attitude or wishes with regard to the possibility of a mistrial. In view of these omissions, the record compels a conclusion that the "jury of eleven" alternative was not adequately explored.
>
> That conclusion is dispositive on this point. Where there is a viable alternative to a mistrial and the district court fails adequately to explore it, a finding of manifest necessity cannot stand.

*Id.* at 39.

[64] I find the First Circuit's reasoning persuasive and think Indiana should consider adopting a similar rule. That is, before declaring a mistrial because individual

jurors have been dismissed and fewer than twelve remain, a trial judge must adequately explore the option of proceeding with fewer jurors under Jury Rule 16, which can generally be satisfied by giving the defendant an opportunity to express his opinion on how to proceed. I am unpersuaded by the State's contentions that the trial court here was not required to give White a chance to be heard on the record, and that an on-the-record hearing would have been "illusory" given the trial judge's supposed unwillingness to proceed with fewer than twelve jurors. Appellee's Br. at 17. To the contrary, when, as here, the court fails to give the defendant a chance to be heard, it weakens the reviewing court's confidence that its "decision came after adequate reflection." *Brock*, 955 N.E.2d at 207.

[65] To be clear, the State is right that "Jury Rule 16(a) require[s] the parties *and the trial court* to agree to proceed with less than [twelve] jurors." Appellee's Br. at 17. As such, after consulting the parties, there are circumstances where the trial court may, without abusing its discretion, decline to proceed with fewer than twelve jurors. *See Parker v. United States*, 507 F.2d 587, 589 (8th Cir. 1974) ("[A] defendant has no absolute right to proceed with a jury of less than twelve."), *cert. denied*. Likewise, the State has no obligation to give its consent, either. *Garske*, 939 F.3d at 332 ("[T]he defendant['s] entitlement to waive trial by a jury of twelve does not carry with it an entitlement to override the government's unwillingness to consent."). But because proceeding with fewer than twelve jurors is a viable alternative to a mistrial if the parties and the court agree, a court must "permit[] the defense at least to express its view before making [an]

unexpected mistrial declaration." *Lovinger*, 845 F.2d at 745. Given the

deficiencies in the record before us, I cannot say that happened here.